EDITH H. JONES, Circuit Judge:
Northlake Christian School (NCS) attempted to forestall strife with its newly-hired principal Pamela Prescott by entering into an employment contract for “bib-lically-based mediation” or arbitration under the auspices of the Institute for Christian Conciliation, these methods being prescribed as the “sole remedy” for any controversy. When the school’s relationship with Prescott deteriorated, however, Prescott filed suit. The district court ordered ADR. Mediation occurred, then arbitration; NCS appealed a highly adverse and somewhat dubious award back to the court; NCS appealed to this court; and we are forced to remand for further proceedings. So much for saving money and relationships through alternative dispute resolution. Perfect justice is not always found in this world.
I. BACKGROUND
NCS hired Prescott as its elementary/preschool principal for the 1999-2000 school year. In a written employment contract, the parties agreed “in conformity with the biblical injunctions of 1 Corinthians 6:1-8, Matthew 5:23,24, and Matthew 18:15-20 ... that any claim or dispute arising out of, or related to, this agreement or to any aspect of the employment relationship” would be referred to “biblically-based mediation” and, if unsuccessful, binding arbitration. The agreement specified that “the arbitration process shall be conducted in accordance with the current Rules of Procedure for Christian Conciliation of the Institute for Christian Conciliation.” Moreover, the parties waived “their respective rights to file a lawsuit against one another in any civil court for such disputes, except to enforce a legally binding arbitration decision.”
In the spring of 2000, NCS told Prescott her contract would not be renewed for the following year and instructed her to vacate the premises of the school by March 31, 2000. She was placed on administrative leave for the duration of the school year contract and was paid her full salary and benefits throughout the contract term.
In February 2001, Prescott filed suit against NCS, its board of directors, and its chief administrator in federal court. She asserted claims for Title VII gender discrimination, sexual harassment, and retaliation, violation of the Louisiana Whistle-blower Protection Act, La. R.S. § 23:967 (2003), and breach of contract. NCS moved to compel arbitration. The court granted NCS’s motion, stayed Prescott’s suit, and administratively closed the case.[1]
To submit their dispute to arbitration, following the failure of mediation, the parties executed a form mediation/arbitration agreement furnished by the ICC. They agreed to be governed by ICC rules, which included conducting the arbitration pursuant to the Montana Uniform Arbitration Act (“MUAA”). Most important, the parties interlineated the agreement in two places. First, the agreement originally provided that all communications, written or oral, “between the parties during the mediation and/or arbitration process *494 shall be inadmissible in a court of law or for legal discovery.” The parties crossed out the “and/or arbitration” language, presumably making such communications admissible in a court of law. Second, on Prescott’s initiative, the parties added and initialed a hand-written provision, which stated: “No party waives appeal rights, if any, by signing this agreement.”
After an unsuccessful attempt at mediation, the parties proceeded before a single ICC arbitrator. Over a six-day period, the arbitrator heard testimony from a multitude of witnesses and reviewed the evidence and affidavits submitted by the parties. On June 14, 2002, the arbitrator determined that NCS had failed to resolve its conflict with Prescott in accordance with Matthew 18, and other biblical scriptures, which he held were incorporated into the terms of Prescott’s employment contract.[2] The arbitrator rendered judgment in favor of Prescott on her breach of contract claim and awarded her $157,856.52 for damage to her reputation and for future loss of income.[3] The arbitrator also awarded NCS $786.46 for past due COBRA payments. NCS filed a motion to reconsider with the ICC administrator.[4] The arbitrator denied the motion.
NCS next moved to vacate the arbitration award in federal court, and argued, inter alia, that the handwritten amendments to the arbitration agreement expanded the federal court’s scope of review. Under this expanded scope of review, NCS urged the district court to vacate the arbitration award, as a matter of law, because Prescott was not wrongfully terminated, and she was not entitled to damages. The district court disagreed and concluded that the “if any” language “merely preserves whatever appeal rights are statutorily granted under the MUAA.” The district court rejected NCS’s substantive claims under the MUAA’s narrow scope of review. NCS now appeals that decision to this court.
II. STANDARD OF REVIEW
On a motion to vacate an arbitration award, we review the district court’s findings of fact for clear error and questions of law de novo. Harris v. Parker College of Chiropractic, 286 F.3d 790, 791 (5th Cir.2002). Normally, the district court’s review of an arbitration award, under the Federal Arbitration Act (“FAA”), is “extraordinarily narrow.” Antwine v. Prudential Bache Securities, Inc., 899 F.2d 410, 413 (5th Cir.1990)(stating that, under the FAA, “courts should defer to the arbitrator’s decision when possible”) (citations omitted).[5] The scope of judicial re *495 view is equally narrow under the MUAA.[6] The MUAA also permits modification of an arbitration award under limited circumstances.[7]
In the instant case, we are called upon to determine whether the parties’ arbitration agreement expanded the scope of judicial review beyond that provided in the MUAA. The district court’s interpretation of a contract, including the initial determination whether the contract is ambiguous, is a conclusion of law. American Totalisator Co., Inc. v. Fair Grounds Corp., 3 F.3d 810, 813 (5th Cir.1993); Thrift v. Hubbard, 44 F.3d 348, 357 (5th Cir.1995). If the contract is ambiguous, then “the determination of the parties’ intent through the extrinsic evidence is a question of fact.” Watkins v. PetroSearch, Inc., 689 F.2d 537, 538 (5th Cir.1982).
III. DISCUSSION
NCS offers several arguments on appeal: (1) the arbitration agreement expanded the scope of judicial review; (2) the arbitrator erred, as a matter of law, in ruling that NCS breached its contract with Prescott and that Prescott was entitled to damages; and (3) the arbitrator violated several provisions of the MUAA.[8] Because we are uncertain whether, and if so, to what extent, the arbitration agreement expanded the scope of judicial review, we vacate the district court’s judgment and remand for further proceedings.
In a broad sense, this dispute is subject to the FAA. See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 478-79, 109 S.Ct. 1248, 1255-56, 103 L.Ed.2d 488 (1989)(finding that the FAA applies to “a written agreement to arbitrate in any contract involving interstate commerce”); 9 U.S.C. § 2 (2000). Thus, the FAA, and *496 the body of federal substantive law interpreting it, would typically govern the resolution of this dispute. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)(reeognizing that the FAA “create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act”).
The FAA, however, does not bar parties from structuring an arbitration by means of their contractual agreements, nor does it preempt all state laws regarding arbitration. See Harris, 286 F.3d at 793 (permitting contractual modification concerning standard of review); Specialty Healthcare Mgmt., Inc. v. St. Mary’s Parish Hosp., 220 F.3d 650, 654 (5th Cir.2000)(recognizing that the FAA “does not preempt all state law related to arbitration agreements”). We held in Gateway Technologies, Inc. v. MCI Telecommunications Corp., 64 F.3d 993, 996 (5th Cir.1995), that “a contractual modification is acceptable because, as the Supreme Court has emphasized, arbitration is a creature of contract and the FAA’s pro-arbitration policy does not operate without regard to the wishes of the contracting parties.”
A threshold issue is which state’s law governs the interpretation of the arbitration contract. Prescott’s employment agreement provided that the arbitration “was subject to ... the Montana Arbitration Act, Title 27, Montana Code Annotated.” The district court viewed this as a choice-of-law provision concerning the standards for arbitration. NCS contends, correctly, that the reference to the MUAA is not a choice-of-law provision, and that Louisiana law controls the interpretation of the arbitration agreement as an addendum to the employment contract. In Valero Refining, Inc. v. M/T Lauberhorn, 813 F.2d 60, 64 n. 5 (5th Cir.1987), this circuit determined that contractual language authorizing arbitration in New York City did not constitute a New York choice-of-law provision. Instead, “the provision merely requires that the procedures that the arbitrators use be in accordance with the laws applicable to New York City.” Id. at 65 (emphasis in original). Accordingly, the MUAA controls the procedures attendant to the arbitration, but not the interpretation of the underlying contract.
Louisiana law applies to this dispute between a Louisiana resident and a Louisiana school concerning the proper interpretation of a Louisiana contract.[9] The employment contract contained a valid provision requiring all disputes to be adjudicated under the laws of Louisiana. In Louisiana, “[wjhere parties stipulate the State law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justifying the refusal to honor the contract as written.” Delhomme Industries, Inc. v. Houston Beechcraft, Inc., 669 F.2d 1049, 1058 (5th Cir.1982)(quoting Associated Press v. Toledo Invs., Inc., 389 So.2d 752, 754 (La.App.1980)). The parties’ additional pre-arbitration agreement in no way detracts from that choice; alternatively, it is independently subject to Louisiana law.
*497 The inquiry thus becomes whether the parties’ arbitration agreement contemplated expanded judicial review. Contrary to the district court’s determination, this matter cannot be resolved on the face of the agreement and requires further factual development. Under Louisiana law, “interpretation of a contract is the determination of the common intent of the parties.” La. Civ.Code Ann. ART. 2045 (2003). However, “[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. Civ.Code Ann. aet. 2046 (2003). Only if the contract is ambiguous may the court look beyond the four corners of the document. Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 386 (5th Cir.2001).
In a handwritten additional paragraph, NCS and Prescott agreed that “[n]o party waives appeal rights, if any, by signing this [arbitration] agreement.” The district court concluded that this language merely preserved whatever appeal rights the MUAA already granted to the parties. This conclusion is far from self-evident. In Gateway, the arbitration agreement provided that “[t]he arbitration decision shall be final and binding to both parties, except that errors of law shall be subject to appeal.” 64 F.3d at 996. The court concluded that this language “expanded review of the arbitration award by the federal courts.” Id. This court reached the same result in Harris, where the agreement provided that “[t]he Award of the Arbitrator shall be binding on the parties hereto, although each party shall retain his right to appeal any questions of law, and judgment may be entered thereon in any court having jurisdiction.” 286 F.3d at 793. While the language in Harris and Gateway is more straightforward, it can certainly be argued that by adding this language to a form contract that otherwise contained no provision concerning appeal of an arbitration award, the parties here intended to expand the scope of judicial review. Such an interpretation heeds the principle that “[a] provision susceptible of different meanings must be interpreted with the meaning that renders it effective and not one that renders it ineffective.” La. Civ.Code abt. 2049 (2003). The district court’s interpretation would seem to render the handwritten modification surplus-age, and therefore meaningless.[10]
Even if the parties intended to affect the scope of judicial review with this language, however, their precise intentions concerning expanded review are ambiguous. We reach this conclusion mindful that “[e]ach provision in a contract must be interpreted *498 in light of the other provisions so that each is given the meaning suggested by the contract as a whole.” La. Civ.Code Abt. 2050. Thus, it is also significant that the parties decided to permit “a court of law” to review written and oral communications (i.e., the record evidence) from the arbitration; this modification of the contract’s form language amplifies their apparent intent to expand the scope of judicial review. Reinforcing Prescott’s apparent intention to preserve expanded appeal rights (it was her attorney who insisted upon these special conditions), Prescott had a court reporter transcribe the arbitration proceedings.
These contractual tidbits strongly suggest that the parties intended judicial review to be available beyond the normal narrow range of the FAA or MUAA. Because they cannot compel a firm decision on the face of the contract, however, we find it ambiguous and must remand for the district court to take evidence on and contractually interpret the circumstances surrounding the making of the provision. The court will then be required to reevaluate under the appropriate standard NCS’s challenges to the arbitration award.
IV. CONCLUSION
For the reasons stated above, we VACATE the district court’s order confirming the arbitration award and REMAND for further proceedings consistent with this opinion.
VACATED and REMANDED.

. On the eve of arbitration, Prescott voluntarily dismissed with prejudice all claims against the individual defendants. Thus, only NCS and Prescott remain parties to this litigation.

. Curiously, the arbitrator employed the biblical passages that were cited as prefatory principles in the contract in order to supersede the actual contract language, which gave Prescott no right to be employed beyond a one-year term. This result appears incompatible with Louisiana law. See Barbe v. A.A. Harmon & Co., 705 So.2d 1210 (1998).

. The arbitrator rejected Prescott’s Title VII claims, as well as her claim under the Louisiana Whistleblower Protection Act. Prescott did not appeal the rejection of these claims to the district court.

. NCS also filed other post-arbitration motions with the arbitrator. NCS filed an objection to ex parte communications, a motion for a new hearing, and a motion for disclosure contending that new evidence had been uncovered that demanded a hearing. The arbitrator summarily denied these motions on July 31, 2002.

. Under the FAA, a district court may vacate an award only if: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. 9 U.S.C. § 10(a)(2001); Harris, 286 F.3d at 791. An *495 arbitration award may also be vacated if in making the award the arbitrator acted with "manifest disregard for the law.” Williams v. Cigna Fin. Advisors, Inc., 197 F.3d 752, 761 (5th Cir.1999).

. Under MUAA, a court may only vacate an arbitration award if:
(a) the award was procured by corruption, fraud, or other undue means; (b) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party; (c) the arbitrators exceeded their powers; (d) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of 27-5-213, as to prejudice substantially the rights of a party; or (e) there was no arbitration agreement and the issue was not adversely determined in proceedings under 27-5-115 and the party did not participate in the arbitration hearing without raising the objection.
Mont.Code. § 27-5-312(l)(2003).

. An arbitration award may be modified or corrected, under the MUAA, only if:
(a) there was an evident miscalculation of figures or mistake in the description of any person, thing, or property referred to in the award; (b) the arbitrators awarded upon a matter not submitted to him and the award may be corrected without affecting the merits of the decision upon the issues submitted; or (c) the award is imperfect in a matter of form not affecting the merits of the controversy.
MontCode § 27-5-313(l)(2003).

. More specifically, NCS argued, in addition to the scope of review issue, that the arbitrator erred in: (1) finding that NCS breached its contract with Prescott; (2) awarding damages that were unauthorized under Louisiana law; (3) exceeding his contractually limited authority; and (4) engaging in misconduct by participating in ex parte communications with Prescott's counsel, neglecting material evidence, and refusing to disclose circumstances likely to affect impartiality. The district court found against NCS on all grounds, and NCS has appealed each assignment of error to this court.

. See Coghlan v. Wellcraft Marine Corp. 240 F.3d 449, 452 (5th Cir.2001) (federal court must apply choice-of-law rules of state in which it sits); Godchaux v. Conveying Techniques, Inc., 846 F.2d 306, (5th Cir.1988) ("Louisiana provides that the law of the place of contracting determines the nature, validity, and construction of that contract.”) (citations omitted).

. Furthermore, the instant case is materially distinct from Action Indus., Inc. v. U.S. Fidelity & Guaranty Co., 358 F.3d 337 (5th Cir.2004). There, the court determined "that the parties' intent to replace the FAA’s vacatur standard [could] not be gleaned from the Agreement’s general choice-of-law provision, which provide[d] that Tennessee law governed] contractual execution and performance.” Id. at 341. Thus, the arbitration clause did "not in any way modify or replace the FAA's rules." Id. However, in the instant case, the contractual modification is not premised on a general choice-of-law provision or a vague reference to a particular state’s arbitration statute. Rather, the parties expressly adopted the ICC arbitration agreement and amended that agreement by inserting tailor-made appellate review language. Thus, the provision at issue is fundamentally different than the provision struck in Action Industries and more closely resembles the provisions approved of in Gateway and Harris. Last, as Action Industries recognizes, "we construe ambiguous contractual language against the party who drafted it.” Id. (citing Ford v. NYLCare Health Plans of the Gulf Coast, Inc., 141 F.3d 243, 249 (5th Cir.1998)). Therefore, we must construe the provision, and any ambiguities contained therein, against Prescott.