United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 8, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-31182
Summary Calendar

PAMELA L. PRESCOTT,

Plaintiff - Appellee

versus

NORTHLAKE CHRISTIAN SCHOOL; ET AL,

Defendants

NORTHLAKE CHRISTIAN SCHOOL,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
(No. 2:01-CV-475)

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Northlake Christian School ("NCS") appeals the district court's order enforcing an arbitration award against NCS obtained by its former employee, Plaintiff-Appellee Pamela Prescott. We affirm the district court's enforcement order.

## I. FACTS AND PROCEEDINGS

NCS's appeal is the latest chapter in its five-year-old employment dispute with Prescott; indeed, this is the second time

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

that these parties have come before us regarding the validity of the arbitrator's award.[1]  As we detailed the facts underlying this dispute in our Prescott I opinion, we shall not repeat them here. We shall, however, briefly review the background proceedings for the sake of clarity.

After being fired from her job as principal at NCS, Prescott brought suit in the district court, alleging Title VII and various state law claims, including breach of her employment contract. After NCS moved successfully to compel arbitration, such proceedings were conducted according to the Rules of Procedure for Christian Conciliation ("Rules") of the Institute for Christian Conciliation ("ICC").  In arbitration, Prescott prevailed on her breach of contract claim and was awarded approximately $ 150,000 in damages for reputational harms and loss of future income.  In reaching his decision, the arbitrator determined that NCS had wrongfully discharged Prescott by failing to follow Biblical precepts, as required in her employment contract; specifically, the conflict resolution process described in Matthew 18.[2]

NCS immediately returned to federal district court, this time requesting vacatur of the arbitrator's award.  NCS insisted that, even though the parties' arbitration agreement specified that

---

[1] See Prescott v. Northlake Christian Sch. , 369 F.3d 491, 493 (5th Cir. 2004) (hereinafter "Prescott I").

[2] All employment contracts at NCS require individuals to follow this process, as well as other provisions of scripture in their every-day dealings with students and other employees.

2

proceedings would be conducted under the Rules of the ICC and the Montana Uniform Arbitration Act ("MUAA"),[3] the parties had actually contracted for plenary judicial review of the arbitration proceedings when they struck through language in NCS's form arbitration agreement, thereby making communications between the parties confidential and inadmissible in a court of law. The parties had also inserted a hand-written provision stating that "[n]o party waives appeal rights, if any, by signing this agreement."[4]  NCS reasoned that, under this expanded scope of review, the district court had jurisdiction to address and hold that the arbitrator misconstrued Prescott's employment contract as well as applicable Louisiana law.  NCS also argued that the arbitrator exceeded his authority and was impermissibly biased — both grounds for vacatur under the MUAA.

The district court ruled against NCS, holding that the parties had not expanded the scope of judicial review of the arbitration

---

[3] Mont. Code Ann. § 27-5-101 et seq.  The parties agreed to be bound by the Rules of Procedure for Christian Conciliation of the ICC.  In their arbitration agreement, the parties also agreed to conduct the arbitration proceedings according to the MUAA, which provides the relevant standard of review and other procedural requirements not covered by the ICC rules.

[4] Although, generally, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et. seq., governs a federal court's consideration of matters involving arbitration, parties are free to contract for expanded judicial review of their arbitration proceedings. Action Indus. v. U.S. Fid. & Guar. Co., 358 F.3d 337, 340 (5th Cir. 2004); Harris v. Parker Coll. of Chiropractic, 286 F.3d 790, 793 (5th Cir. 2002); Gateway Technologies, Inc. v. MCI Telecommunications, Corp., 64 F.3d 993, 996-97 (5th Cir. 1995).

3

proceedings and that NCS had not shown that it was entitled to vacatur under the MUAA's narrow standard of judicial review of proceedings in arbitration. NCS appealed this ruling to us in Prescott I.

Holding that the parties' handwritten strike-outs and their insertion to their arbitration agreement were ambiguous, we vacated the district court's order and remanded with instructions for the district court to hold an evidentiary hearing. In so doing, we directed the district court to "take evidence on and contractually interpret the circumstances surrounding the making of the provision."[5] On remand, the district court held an evidentiary hearing as instructed, after which it again concluded that the parties had not contractually expanded the scope of review and again ordered enforcement of the arbitrator's award for the reasons given in its previous opinion.

In the instant appeal, NCS challenges the district court's determination that the arbitration agreement did not expand the parties' right to judicial review on appeal. In addition, NCS now contends that it was entitled to a jury trial on the question of interpretation of the arbitration agreement, not just the making of that agreement, reiterating the contention that the district court erred in its earlier order enforcing the arbitration award in favor of Prescott.

---

[5] 369 F.3d at 497-98 (emphasis added).

II. DISCUSSION

A.   The Ambiguous "Appeal Rights" Clause

     1.   Standard of Review

We review the district court's findings of facts for clear error.[6]  "The burden of showing that the findings of the district court are clearly erroneous is heavier if the credibility of witnesses is a factor in the trial court's decision."[7]  "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole."[8]

     2.   The Evidentiary Hearing

On remand from Prescott I, the district court heard testimony from the parties as to whether, in amending their arbitration

---

[6] Prescott I, 369 F.3d at 494.  We erroneously stated in Prescott I that this provision and any ambiguities therein must be construed against Prescott, as she had added the language. Id. at 497 n.10.  It is undisputed at this time that NCS added the language, "if any" to the contract, thus this language should be construed against NCS.  See La. Civ. Code Ann. § 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."); Lifemark Hosp., Inc. v. Liljeberg Enters., 304 F.3d 410, 440 (5th Cir. 2002)(construing contract language against drafting party pursuant to Louisiana law).  The parties' employment contract contained a clause providing that the contract's language should be construed according to Louisiana law; although the arbitration agreement did not contain such a provision, it is a contract entered into in Louisiana by two Louisiana parties, and therefore we employ Louisiana law in our analysis of the contractual language. Prescott I, 369 F.3d at 496.

[7] Coury v. Prot, 85 F.3d 244, 254 (5th Cir. 1996)(citation omitted).

[8] United States v. Valencia, 44 F.3d 269, 272 (5th Cir. 1995).

5

agreement, they had intended to expand the scope of any subsequent judicial review. Prescott testified that she understood at the time that she had only a limited right of appeal but that she wanted to confirm in writing that, by signing the arbitration agreement, she was not waiving or curtailing even this limited right of review. To that end, she requested that the parties include a clause stating that "No party waives appeal rights by signing this agreement." Prescott testified further that NCS twice rejected her suggestion but finally agreed to accept her modification on the condition that the words "if any" be inserted after "appeal rights."

Boyd Leahy testified on behalf of NCS that the clause was added to preserve all appeal rights in the event that there was no successful mediation. He claimed that the words "if any" were added to the clause because, if the mediation had been successful, there would have been no appeal.[9]

NCS also argued to the district court that the conduct of the parties demonstrated their belief that they had contracted for appeal rights beyond those guaranteed by the MUAA. NCS emphasized that (1) Prescott had hired a court reporter to transcribe the entire arbitration hearing, (2) during the arbitration proceeding, the parties discussed possible appeal to the Fifth Circuit, (3)

_____

[9] Leahy added, however, that he understood that he agreed to arbitration with a right of appeal in the case of mistake or unfair decision, the same right of appeal guaranteed under the MUAA.

6

Prescott proffered evidence for consideration on appeal, and (4) she agreed to the arbitrator's retaining custody of disputed evidence pending final appeal.

The district court ruled in favor of Prescott, holding that the phrase "if any" was inserted to preserve appeal rights normally guaranteed by the MUAA. He interpreted "if any" to mean "if there are any," a phrase that implies the possibility of none. "In other words," ruled the district court, "the parties agreed to not waive appeal rights <u>if there are any</u>." NCS's insistence on adding the words "if any" to the contract, the court concluded, demonstrated its own concern that, without these words, Prescott might be allowed to appeal the arbitrator's decision on grounds not permitted by the MUAA. The court stated that NCS's explanation that "if any" referred to the possibility that there would be no appeal rights if mediation was successful "makes no sense because it is obvious that a successful mediation would mean there would be no need for an appeal." The only reason for including language regarding appeal rights under these circumstances, reasoned the court, "was to clarify the parties' intention in the event there was an arbitration hearing and decision."

In contrast, the district court found credible Prescott's explanation that she was concerned that the arbitration agreement stated that "arbitration will be the exclusive remedy for this dispute and...we may not later litigate these matters in civil court" without reference to the appeal rights available under the

MUAA. And, the court disagreed with NCS's characterization of the parties' conduct, finding that it indicated only that they were aware that some ground for appeal was available, not necessarily that they would be entitled to plenary judicial review.

NCS also cites Prescott's communications with the ICC prior to the mediation as evidence of her intent to gain plenary appeal rights, noting that she stated in a letter protesting the ICC's jurisdiction that she intended to participate, "reserving every right to exhaust every appeal." This proves nothing, however; a reading of the entire letter shows that Prescott's primary concern was her perception that the ICC was biased in favor of NCS. Her letter makes clear that she felt herself cheated out of a fair trial and considered the ICC a willing party in "this evil attempt to permanently damage my professional and personal integrity... thus becoming a biased party supporting NCS in this action." Prescott also referred to the ICC as "a biased party to this conspiracy to effectively strip away my guaranteed Constitutional rights...." The MUAA provides for vacatur of awards granted by a biased arbitrator.[10]

The district court committed no error in determining that the parties did not intend to expand the scope of judicial review. The court's conclusion — that Prescott intended only to preserve what rights she thought she had and that NCS intended to ensure that she

_____

[10] Mont Code Ann. § 27-5-312(1)(b).

8

did not gain any appeal rights to which she was not already entitled — is plausible. Even if the court had not credited Prescott's explanation that she wished only to preserve her rights under the MUAA and instead had credited NCS's explanation that Prescott wanted plenary appeal rights, NCS's insertion of the words "if any" effectively nullified any such effort on her part. Thus, when the words furnished by each party are construed against the writer,[11] and after noting that NCS made the final change to the language, it is logical to assume that, in the final revised draft of the arbitration agreement, the parties intended nothing more than to reiterate that the appeal rights enumerated in the MUAA — and only such appeal rights — would be available to them. We affirm the district court's ruling that the parties did not expand the scope of review available to them under the MUAA.

B.   Jury Trial

After we remanded this case in <u>Prescott I</u> for an evidentiary hearing on the meaning of the contract's wording, NCS requested a jury trial on the interpretation of the contract. The district court denied this request, noting that motions to enforce or vacate an arbitration award carry no right to a trial by jury. On appeal, NCS asserts that the FAA permits parties to demand a jury trial to resolve factual issues surrounding the making of an arbitration

---

[11] <u>See</u> La. Civ. Code Ann. § 2056.

agreement,[12] and that this right should also apply to interpretation of an arbitration agreement as well.

Neither the FAA nor the MUAA provide for a jury trial under these circumstances. Unlike the FAA, the MUAA makes no explicit guarantee of a trial by jury at any stage of arbitration-related litigation.[13] As for the FAA, its § 4 allows for a jury trial only to resolve fact issues surrounding "the making of an arbitration agreement"[14] and applies in proceedings to compel arbitration. Although the "making of an arbitration of an agreement" could be broadly construed to include any factual issue surrounding the writing of the arbitration agreement, we have not done so. In fact, we have explicitly interpreted § 4 to require that a party make "at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true."[15] The party must put the existence

---

[12] 9 U.S.C. § 4.

[13] Compare Mont. Code Ann 27-5-115(1), (2) (directing courts to proceed summarily to the determination whether there is an agreement to arbitrate as "[s]uch an issue, when in substantial and bona fide dispute, shall be immediately and summarily tried.") with 9 U.S.C. § 4 ("If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue.").

[14] 9 U.S.C. § 4 (emphasis added).

[15] Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 (5th Cir. 1992). "While Section 4, by its terms, applies to proceedings to compel arbitration, its provisions have been deemed applicable also in instances when the proceeding is initiated by the party seeking to avoid

of the agreement to arbitrate itself at issue to create a jury-triable issue.[16]  NCS is not seeking a jury determination whether the parties contracted to arbitrate disputes; they clearly did. NCS seeks a jury determination only as to the meaning of particular words of the agreement that the parties acknowledge having made.

In contrast, neither § 10 of the FAA (the portion governing judicial review of an arbitration award) nor any other part of the FAA explicitly authorizes jury trials on issues of interpretation of other aspects of an arbitration agreement.  Obviously, NCS's argument relates to the enforceability of the contract, an issue that we have expressly held not to be encompassed within § 4's jury trial provision.[17]

NCS also contends that it is entitled to trial by jury by virtue of Federal Rule of Civil Procedure 38.  But of course, Rule 38 only <u>preserves</u> the parties' right to jury trial in cases in

---

arbitration." 8 James Wm. Moore et al., Moore's Federal Practice § 38.33 (3d ed. 1999).

[16] <u>Id.</u>  "[I]t is well-established that '[a] party to an arbitration agreement cannot obtain a jury trial merely by demanding one.'"  <u>Am. Heritage Life Ins. Co. v. Orr</u>, 294 F.3d 702, 710 (5th Cir. 2002) (quoting <u>Dillard</u>, 961 F.2d at 1154).

[17] <u>See Am. Heritage Life</u>, 294 F.3d at 710 (holding that party's argument that an arbitration agreement was unconscionable, lacked mutuality, and failed to result from a meeting of the minds did not impact the "making" of the arbitration agreement, as required by statute, because a party contesting the "making" of an agreement for purposes of § 4 must put the very existence of the contractual agreement to arbitrate at issue).

11

which the right is guaranteed by the Seventh Amendment or is provided by statute.[18]  In determining whether a party enjoys a right to a trial by jury when the statute does not expressly grant one, we examine (1) the nature of the issues involved, comparing them to actions brought in 18th century England before the merger of law and equity, and (2) the nature of the remedy sought, whether legal or equitable.[19]  "In the 18th century, an action to set aside an arbitration award was considered equitable."[20]  And, even though NCS ultimately seeks vacatur of the arbitrator's award for damages, it seeks a jury trial only on the issue whether it contracted to expand the scope of review of the award, not the award itself.  NCS thus seeks only a declaration of its rights, not a legal award of damages.  NCS enjoys neither a Seventh Amendment nor a statutory right to a trial by jury under these circumstances.

Finally, in our Prescott I remand for an evidentiary hearing, we only ordered the district court "to take evidence on and contractually interpret the circumstances surrounding the making of the [review] provision."[21]  We did not order the district court to conduct a jury trial.  The district court did not abuse its

---

[18] Rachal v. Ingram Corp., 795 F.2d 1210, 1214 (5th Cir. 1986); 8 James Wm. Moore et al., Moore's Federal Practice § 38 (3d ed. 1999).

[19] Tull v. United States, 481 U.S. 412, 417-18 (1987).

[20] Teamsters v. Terry, 494 U.S. 558, 566 (1990)(citations omitted).

[21] Prescott, 369 F.3d at 498 (emphasis added).

12

discretion by declining NCS's request for a jury trial.[22]

## C.   Motion to Vacate Award

As the district court did not clearly err in its determination that the parties did not intend to expand their right of judicial review, we must consider whether the district court properly denied NCS's motion to vacate the arbitration award under the narrow standard of review applicable to such an issue.  NCS insists that the arbitrator's award must be vacated because (1) he erroneously concluded that NCS had breached its employment contract with Prescott and that she was entitled to damages — conclusions that NCS contends are in conflict with Louisiana law — (2) the arbitrator exceeded his authority, and (3) the arbitrator was biased against NCS.

### 1.   Standard of Review

We review a district court's confirmation or vacatur of an arbitration award de novo.[23]  The district court's scope of review of an award by the arbitrator, however, is extremely limited. Although the FAA would normally provide the grounds for vacatur, in this case the parties' arbitration agreement specifies that "[t]his

---

[22] Becker v. Tidewater, Inc., No. 04-30243, 2005 U.S. App. LEXIS 5124 at * 4 (5th Cir. Mar. 30, 2005)(holding that district court did not abuse its discretion by denying party's request for jury trial when party had no independent right to jury trial and court of appeals had remanded case without instructions that district court provide such a trial).

[23] Gateway Technologies, Inc. v. MCI Telecommunications Corp., 64 F.3d 993, 996 (5th Cir. 1995).

agreement is subject to arbitration pursuant to the Montana Arbitration Act, Title 27, Montana Code Annotated," which statement expresses the parties' binding agreement that Montana's <u>procedural</u> rules will govern the entire arbitration process, including the review of the award.[24] And, the Rules of the ICC do not purport to change the scope of judicial review of its arbitration decisions, stating that "[t]he arbitration decision is final and cannot be reconsidered or appealed except as provided by Rule 41 and/or <u>civil law</u>."[25] As we noted in <u>Prescott I</u>, the MUAA provides substantially identical grounds to the FAA for vacatur by the district court:[26] to wit,

> (a)   the award was procured by corruption, fraud, or other undue means;
> (b)   there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

---

[24] <u>See</u> <u>Hughes Training Inc. v. Cook</u>, 254 F.3d 588, 593 (5th Cir. 2001)(concluding that, despite provision in arbitration agreement stating that FAA governed motions to compel or enforce arbitration, the agreement's specific provision stating that "the arbitration process shall be conducted in accordance with the Employment Problem Resolution Procedures" meant that "[t]he procedural rules pertained to the entire arbitration process, which included the review of arbitration awards.").

[25] ICC Rule 42 (emphasis added).

[26]   369 F.3d at 494-95. The FAA permits only strictly limited review —— it has been called "the narrowest known to the law." <u>ARW Exploration Corp. v. Aguirre</u>, 45 F.3d 1455, 1462 (10th Cir. 1995)(quoting <u>Litvak Packing Co. v. United Food & Commercial Workers</u>, 886 F.2d 275, 276 (10th Cir. 1989)).

14

(c) the arbitrators exceeded their powers;[27]

The MUAA does not allow for judicial review of arbitration awards on the merits of the controversy.[28] (As NCS has not argued that the arbitrator manifestly disregarded the law, we do not consider this

---

[27] Mont. Code Ann. § 27-5-312. An award may also be vacated if the arbitrators refused to postpone a hearing despite sufficient cause being shown or if there was no arbitration agreement and the party participating in the hearing objected on this basis. Id.

[28] Geissler v. Sanem, 949 P.2d 234, 238 (Mont. 1997)(holding party unentitled to vacatur of arbitration award as it had not demonstrated that arbitrator had exceeded his power, "[i]nstead of presenting evidence to the District Court that the panel exceeded its power, Geisslers' appeal alleged only that the panel had arrived at the wrong result."); May v. First Nat'l Pawn Brokers, 887 P.2d 185, 187 (Mont. 1994)("The MUAA clearly does not authorize judicial review of arbitration awards on the merits of the controversy."). The standard is the same under the FAA. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 98 L. Ed. 2d 286, 108 S. Ct. 364 (1987)("Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."); Six Flags Over Tex. v. IBEW, 143 F.3d 213, 214 (5th Cir. 1998)("The courts have no authority to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract."); Int'l Bhd of Elec. Workers v. Green Corp., 725 F.2d 264, 268-269 (5th Cir. 1984)("We refrain from commenting on the correctness or incorrectness of the arbitrator's factual findings and legal conclusions. That is not our function. Nor shall we impress the law of corporations, contracts, evidence, or other legal rules and concepts upon this situation and then measure the arbitrator's actions against them. We consider that to be inconsistent with the national arbitration policy and the many decisions limiting judicial oversight. What we might have done to resolve the factual and legal issues were we the deciding body is of no moment. We are not the trier of fact nor the elucidator of the bargaining agreement. The arbitrator, by active choice of the parties, exclusively performs those functions.").

15

ground for vacatur.[29])

## 2. Mis-interpretation of Louisiana Law

NCS dedicates the bulk of its appellate brief to demonstrating that the arbitrator misconstrued both Louisiana law and the contract between the parties. NCS contends that, under Louisiana law, it did not breach its contract with Prescott and therefore cannot be liable for damages. Arbitrators have the power to decide issues of fact and law under the MUAA[30] and, as should be obvious, neither the MUAA nor the FAA permits either the district court or this court to review the merits of the controversy underlying this arbitration award.[31] We decline to consider NCS's attacks on the arbitrator's interpretation of law or fact.

## 3. Exceeding the Powers of the Arbitrator

An arbitrator exceeds his powers when he acts outside the limits of the authority granted to him by the arbitration agreement,

---

[29] Courts reviewing arbitration awards pursuant to the MUAA or the FAA may also vacate awards if an arbitrator has demonstrated "manifest disregard" for the law, a non-statutory court-approved exception to these statutes. Geissler, 949 P.2d at 237-38 (holding that district courts may vacate arbitration awards if the arbitrator "is aware of a clearly governing principle of Montana law, and blatantly refuses to follow it. . ."); Prestige Ford v. Ford Dealer Computer Servs., 324 F.3d 391, 397 (5th Cir. 2003)(same).

[30] Paulson v. Flathead Conservation Dist., 91 P.3d 569, 574 (Mont. 2004).

[31] See infra at n. 27.

16

such as deciding issues that have not been submitted to him[32] or acting contrary to express provisions of that agreement.[33]  As a general rule, the fact that the remedy ordered by an arbitrator is inconsistent with state law is not grounds for vacating an award.[34]

NCS argues that § 27-5-113 of the MUAA exempts employment agreements from the automatic application of many other portions of the code, including § 27-5-312(2), which states that the fact that an arbitrator has awarded damages that a court could or would not is not grounds for vacatur.  Prescott responds that § 27-5-113 of the Montana Code refers only to labor agreements, as it is titled "Application to Labor Agreements."[35]  Neither party cites any case law in support of their arguments or stating the converse, that an arbitrator's award of damages inconsistent with state law <u>is</u> grounds for vacatur.  As NCS's argument appears to be in conflict with

---

[32] <u>Nelson v. Livingston Rebuild Ctr., Inc.</u>, 981 P.2d 1185, 1187 (Mont. 1999).

[33] <u>Paulson</u>, 91 P.3d at 574; <u>Terra W. Townhomes, L.L.C. v. Stu Henkel Realty</u>, 996 P.2d 866, 871 (Mont. 2000).

[34] <u>See</u> <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 58 (1995)(holding that, as parties had incorporated arbitration rules permitting arbitrator to award punitive damages, such damages were permissible despite New York law prohibiting award of such damages in arbitration proceedings); <u>Nelson</u>, 981 P.2d at 1188 (Mont. 1999)("Without reaching the merits of whether the damages were correctly awarded in the first instance, we agree that the arbitrator did not exceed his powers by awarding them. The fact that the damages might not have been awarded by a court of law is not grounds for vacating the award.")(citing Mont. Code Ann. § 27-5-312(2)).

[35] Mont. Code Ann. § 27-5-113.

established law, we decline to adopt this expansive construction of Montana's statute.[36]

NCS argues that the arbitrator also exceeded his powers by awarding on a matter not submitted for resolution and by awarding damages inconsistent with Louisiana law, despite the employment contract's provision requiring that Louisiana law govern the employment relationship. An award is sustainable against a challenge that the arbitrator has exceeded his power if the award can be "rationally inferred" from the contract.[37] That we may disagree with the arbitrator's interpretation of both law and fact, including his determination of the kinds of damages allowed by the contract, is not a grounds for vacatur.[38] "To draw its essence from the contract, an arbitrator's award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter and purpose of the agreement. The award must, in some logical way, be derived from the wording or purpose of the contract."[39]

---

[36] See Paulson, 91 P.3d at 574 (holding that awards will be vacated only if not rationally related to the parties' agreement); Nelson, 981 P.2d at 1188 (stating that fact that court could not have awarded same damages as arbitrator was not grounds for vacatur in employment dispute between individual employee and company).

[37] Terra W. Townhomes, 996 P.2d at 871; Glover v. IBP, Inc., 334 F.3d 471, 475 (5th Cir. 2003).

[38] See id.

[39] Glover, 334 F.3d at 475 (quoting Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co., 918 F.2d 1215, 1218 (5th Cir. 1990) (internal quotation marks and citations omitted)).

18

First, the statement of issues that the parties submitted to the ICC for resolution through conciliation included determinations of, *inter alia*, (1) whether NCS wrongfully terminated Prescott; (2) what damages, if any, does NCS owe Prescott; and (3) how and when should damages be paid. The issues whether NCS breached Prescott's employment contract by wrongfully discharging her, as the arbitrator ultimately found, and what damages should be awarded for that reason, were plainly placed before the arbitrator by the parties.

Second, the arbitrator's award of damages is not contrary to express contractual provisions. In contending that the award is contrary to the contract, NCS argues that, because the parties included a Louisiana choice-of-law provision in the employment contract, they agreed to have their employment relationship governed by Louisiana law. Therefore, reasons NCS, the arbitrator was limited to awarding damages that would be available under Louisiana law.[40] The narrow scope of our review limits us to inquiring

---

[40] The Supreme Court has rejected a similar argument in <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52 (1995). In <u>Mastrobuono</u>, the parties' contract included a New York choice of law provision in addition to an arbitration provision, stating that arbitration proceedings would be governed by the rules of the National Association of Securities Dealers ("NASD"). 514 U.S. at 58-59. Although the NASD rules allowed arbitrators to award "damages" without reference to punitive damages, New York case law forbade arbitrators from awarding punitive damages, even though punitive damages might be awarded by a New York state court, and the parties' contract itself was silent on the subject. <u>Id.</u> at 61. The Court based its decision on an inquiry into whether the parties intended to exclude or include punitive damages from arbitration proceedings, eventually concluding that punitive damages were permissible — stating that "if contracting parties agree to <u>include</u> claims for punitive damages within the

19

whether an award is rationally derived from the parties' contract, or whether it is contrary to express contractual provisions.[41] Thus, we must examine first whether the parties contracted to restrict arbitration awards to damages ordered by a court of law applying the substantive law of Louisiana. Neither the employment contract nor the arbitration agreement specifically mention, or limit, the kind of damages that may be awarded in the arbitration proceedings. Both agreements do, however, express the parties' intention to abide by the Rules of the ICC, which specify that arbitrators may award

> any remedy or relief that they deem scriptural, just and equitable, and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract. In making their decisions, the arbitrators shall consider, but are not limited by, the remedies requested by the parties.[42]

---

issues to be arbitrated, the FAA ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration." Id. at 59, 64. Although this case differs slightly, in that NCS does not argue that Louisiana law purports to limit the kinds of damages available in arbitration proceedings, the Court made clear that the relevant inquiry was whether the parties intended to exclude punitive damages from consideration in arbitration proceedings, not whether such damages were available under state law.

[41] Terra W. Townhomes, 996 P.2d at 871.

[42] ICC Rule 40(b). Moreover, ICC rule 42 states that "[s]hould these Rules vary from state or federal arbitration statutes, these Rules shall control except where the state or federal rules specifically indicate that they may not be superseded." The MUAA contains no restrictions on the amount or kinds of awards available in arbitration.

We hold that the contract's silence on limitations of damages, when contrasted with the Rules' express, broad provision for any manner of damages the arbitrator deems acceptable, demonstrates that the arbitrator's award of damages, even if not available under substantive Louisiana state law, was not expressly contrary to the parties' contract.

The arbitrator's award is also rationally derived from the employment agreement. That contract does not state broadly that Louisiana law will govern every aspect of the employment relationship between the parties, only that "[t]his contract shall be interpreted under the laws of the state of Louisiana as if jointly authored by the parties."[43]

More importantly, the employment contract states the overarching principle that the parties will be governed by biblical provisions, both in the substantive terms of their employment relationship and in their arbitration and mediation proceedings. Specifically, employees are required to affirm that (1) they are "Born Again" Christians, (2) they have a sense of God's will and that their presence at NCS is at God's direction, (3) they will

---

[43] NCS appears to rely on our language in Prescott I to the effect that Louisiana law applies to this dispute as support for its argument that the arbitrator exceeded his powers when he awarded of damages inconsistent with Louisiana law. See 369 F.3d at 496. This argument is specious: In Prescott I, we inquired only "which state's law governs the interpretation of the arbitration contract" and decided that, consistent with the above-cited contractual language, Louisiana law governed the interpretation of the contract's language. Id. (emphasis added).

21

manifest the highest Christian virtue and personal decorum in and out of school, and (4) they will attend and financially support a local church with fundamental beliefs that are in agreement with the doctrinal statement of Northlake Christian School. Furthermore, each employee promised to abide by the precepts of Matthew 18: 15-17 and Galatians 6:1, and to resolve all differences, including those not submitted to arbitration, according to biblical principles. This is the provision of the contract that the arbitrator held NCS to have violated, and this is the violation for which the arbitrator assessed damages against NCS.[44]

The parties thus evinced a clear desire to incorporate biblical provisions into their everyday employment dealings. Whether such a contract is sustainable under Louisiana law is not a question for this court: The parties freely and knowingly contracted to have their relationship governed by specified provisions of the Bible and the Rules of the ICC, and the arbitrator's determination that NCS had not acted according to the dictates of Matthew 18 relates to that contract. Further, the Rules of the ICC indisputably contemplate that an arbitrator will have extremely broad discretion

---

[44] Although dicta in <u>Prescott I</u> stated that the arbitrator's decision was based on "prefatory language" in the employment agreement that applied only to the parties' choice of arbitration and mediation rules, in fact, such language is also included within the substantive terms and conditions of employment in the employment contract. <u>See</u> 369 F.3d at 494 n.2. As that dicta was not necessary to our decision in <u>Prescott I</u>, it has no binding effect on our instant review of the district court's decision on remand.

22

to fashion an appropriate remedy; and no language in the parties' contracts expresses their intent to depart from the Rules of the ICC. We hold that the arbitrator's award of damages is rationally derived from Prescott's employment contract with NCS and not contrary to any express contractual provisions, either biblical or secular. Consequently, NCS is not entitled to vacatur of the arbitrator's decision on this ground and the district court's order enforcing the arbitration award cannot be vacated for the reasons asserted by NCS.

4. Misconduct by Arbitrator

Finally, NCS asserts that the arbitrator's award should be vacated because he participated in <u>ex parte</u> communications with Prescott's counsel, neglected to hear material evidence pertinent to the controversy, and refused to disclose circumstances likely to affect partiality. NCS contends further that, under either the FAA or the MUAA, the district court had the power and duty to vacate the arbitration award because of the arbitrator's apparent bias.

NCS includes only two sentences on this argument in its brief, electing instead to direct our attention to documents that it filed in the district court, which documents NCS purports to adopt by reference in its brief. But, an appellant must include the substance of its arguments in the body of its brief: We will not consider arguments presented only in earlier filings.[45] As we do

_____

[45] <u>See</u> <u>Yohey v. Collins</u>, 985 F.2d 222, 224-25 (5th Cir. 1993)(holding that appellant had abandoned arguments as "[h]e

23

not consider arguments that are not adequately briefed to us,[46] we decline to entertain NCS's assertions on this point.

### III. CONCLUSION

The district court did not clearly err in deciding to credit Prescott's version of events over that of NCS and, accordingly, to hold that the parties did not expand the scope of judicial review over the arbitration award. Neither did the district court abuse its discretion in refusing to order a jury trial to ascertain the meaning of the party's hand-written addenda to their arbitration agreement, because, as a matter of law, NCS was not entitled to demand a jury trial on this or any other issue, save only the making of the contract which was not questioned. The district court correctly determined that NCS had not demonstrated entitlement to vacatur of the arbitration award on any of the narrow grounds on which a court of law may vacate such an award. The district court's

---

requests, in part, the adoption of previously filed legal and factual arguments in his objections to the magistrate judge's report and in various state court pleadings. He specifically states that he will not repeat such claims. Yohey has abandoned these arguments by failing to argue them in the body of his brief."). In Yohey, we also noted that to permit the appellant to incorporate arguments from other briefs would lengthen a brief already at the 50-page limit. Id. NCS's brief, likewise, is already quite lengthy at 62 pages.

[46] L&A Contracting Co. v. S. Concrete Servs., 17 F.3d 106, 113 (5th Cir. 1994)(holding appeal to be abandoned because appellant cited no authority in a one-page argument); Fed. R. App. P. 28(a)(9)(A)(requiring argument to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

order enforcing Prescott's arbitration award is, in all respects,

AFFIRMED.