United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 1, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-10277

MICHAEL GLOVER,

Plaintiff -
Counter Defendant -
Appellee - Cross Appellant,

versus

IBP, INC.,

Defendant -
Counter Claimant -
Appellant - Cross Appellee.

Appeals from the United States District Court
for the Northern District of Texas

Before DeMOSS and STEWART, Circuit Judges,  and VANCE[*], District Judge.

CARL E. STEWART, Circuit Judge:

Defendant-Appellant IBP, Inc. ("IBP"), moved the district court to set aside an arbitrator's award in favor of Plaintiff-Appellee Michael Glover ("Glover"), arguing that the arbitrator exceeded his authority. The district court refused to set aside the award and to grant Glover prejudgment interest and attorney's fees. Glover and IBP now cross-appeal. Finding no error, we affirm.

---

[*] District Judge of the  Eastern District of Louisiana, sitting by designation

## FACTUAL AND PROCEDURAL BACKGROUND

In September 1996, Michael Glover sustained on-the-job injuries to his lower extremities and underwent total knee replacement. Glover worked for IBP, a meat packing company based in Amarillo, Texas where he split beef carcasses. To perform this job, he would ride up a hydraulic platform, insert a power saw into the carcass, then ride the platform down splitting the carcass. On the day of the accident, the platform collapsed and Glover shattered his right leg. To date, Glover's medical costs have exceeded $70,000 and his future medical expenses are expected to be approximately $70,000.

Following the accident, Glover elected to participate in IBP's Workplace Injury Settlement Program – Texas ("WISP" or "Program"). To elect into the WISP, Glover signed a waiver giving up his right to sue IBP. IBP, as permitted by Texas law, has elected not to subscribe to Texas workers compensation insurance, but rather has engaged the WISP. The WISP is IBP's no-fault employee benefit plan. In exchange for a promise not to sue, an injured employee receives enumerated no-fault benefits. After the accident, IBP paid Glover nearly $100,000 consistent with the WISP. The WISP calls for arbitration if a dispute arises. Glover demanded arbitration of his damages. The issues presented for arbitration were as follows:

> A. Claimant's request for an award of compensatory damages for pain and suffering, disfigurement, and loss of enjoyment of life (referred to herein as physical impairment) by reason of the injury in question.
> B. Claimant's request for Lifetime Payments under WISP in connection with the injury in question.

In December 2000, the arbitrator, Tad Fowler, awarded Glover $350,000 in "compensatory damages for physical pain and mental anguish, disfigurement, and physical impairment (a/k/a loss of

enjoyment of life) . . . to be paid within 21 days of" December 20, 2000. The arbitrator denied

Glover's request for lifetime payments under Article 3.16 of the WISP.

On December 21, 2000, Glover filed his Original Complaint and Motion to Confirm the

Arbitrator's Award in the district court. On January 21, 2001, IBP filed its Answer and Counterclaim

Moving for Vacatur. On January 28, 2002, the district court confirmed the arbitrator's award and

denied IBP's motion for vacatur.[1] Glover filed post-judgment motions for attorney's fees and interest

which the district court denied in its Amended Final Judgment. Both parties now appeal.

## DISCUSSION

### I.      Standard of Review

We review the district court's conclusions of law de novo and findings of fact for clear error.

Hughes Training Inc. v. Cook, 254 F.3d 588, 592 (5th Cir. 2001). We limit review of arbitration

awards to give deference to the decisions of the arbitrator. Harris v. Parker College of Chiropractic,

286 F.3d 790, 792 (5th Cir. 2002). Although "review of an arbitration award is extraordinarily

narrow," under the Federal Arbitration Act (FAA):

> [A] district court may vacate an award only if: (1) the award was procured by
> corruption, fraud, or undue means; (2) there is evidence of partiality or corruption
> among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced
> the rights of one of the parties; or (4) the arbitrators exceeded their powers. 9 U.S.C.
> § 10(a). An additional ground for vacating an arbitration award is that in making the
> award the arbitrator acted with manifest disregard for the law.

Id; see Williams v. Cigna Fin. Advisors, Inc., 197 F.3d 752, 759 (5th Cir. 1999) (citing First Options

of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995)).

---

[1]Specifically, the district court granted Glover's motion for summary judgment, which moved the court to confirm the arbitrator's award, and denied IBP's motion for vacatur of the award and for summary judgment. Glover does not appeal the arbitrator's determination that he is not entitled to lifetime benefits under WISP.

II.     The arbitrator did not exceed his authority under the WISP

IBP contends that the arbitrator exceeded his authority in violation of 9 U.S.C. § 10(a)(4). IBP advances three arguments to support this contention. First, IBP argues that the arbitrator failed to draw its essence from the WISP and its underlying ERISA policies. Second, IBP argues that the arbitrator awarded damages beyond the scope of the plan. Third, IBP argues that the parties did not agree to arbitrate common law damages. At the heart of each of IBP's arguments is whether the WISP includes damages for pain and suffering.

To determine whether an arbitrator exceeded his powers, we must examine the language in the arbitration agreement. See Brook v. Peak Int'l, Ltd., 294 F.3d 668, 672 (5th Cir. 2002). When an arbitration agreement gives an arbitrator authority to interpret and apply a contract, the arbitrator's construction of that contract must be enforced so long as it is "rationally inferable from the letter or purpose of the underlying agreement." Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1320 (5th Cir. 1994). In deciding what is rationally inferable from the underlying contract we are guided by the usual state-law rules of contract interpretation. See Harris v. Parker College of Chiropractic, 286 F.3d 790, 793 (5th Cir. 2002).

The WISP provides the following provisions relevant to the dispute:

Section 2.01. LIABILITY FOR DAMAGES.

(a) The Company will make payments for damages for an Employee's compensable injury without regard to the Company's fault or negligence if:
(1) The injury arises out of and in the course and scope of employment; and

4

(2) The Employee and spouse, if required by the Company, agree in writing to all terms of the Program.[2]

(emphasis added). The WISP defines damages and compensable injury as follows:

Section 1.01. DEFINITIONS. In this Program:

(4) "Compensable injury" means an injury that arises out of and in the course and scope of employment for which damages are payable under this Program.
. . .
(6) "Damages" means a payment made by the Company based on a compensable injury. The term includes, but is not limited to, payments for medical expenses, lost income, impairment and function, pain and suffering and death or burial arising out of a compensable injury.

(emphasis added). Article 3 of the WISP, titled PAYMENTS, explains how payments are to be calculated. Specifically, Article 3 contains formulae for income payments, death and burial payments, and medical payments. IBP argues that the arbitrator failed to draw from the essence of the WISP.

In Executone, we explained that "[w]e must sustain an arbitration award even if we disagree with the arbitrator's interpretation of the underlying contract as long as the arbitrator's decision draws its essence from the contract." 26 F.3d at 1320 (internal quotation marks and citations omitted). "To draw its essence from the contract, an arbitrator's award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter and purpose of the agreement. The award must, in some logical way, be derived from the wording or purpose of the contract." Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co., 918 F.2d 1215, 1218 (5th Cir. 1990) (internal quotation marks and citations omitted). In applying this highly deferential standard, "this Court looks only to the result reached. The single question is whether the award, however arrived at, is rationally inferable from the contract." Id. at 1219 n.3.

_____

[2]IBP does not dispute that Glover meets these two conditions which are necessary to qualify for a compensable injury.

5

In the present case, the arbitrator concluded that Glover is entitled to pain and suffering damages under the WISP. IBP argues that the language of the WISP provides no rational basis for the arbitrator's award because the award represented remedies never provided for in the WISP. Specifically, IBP argues that although "payments" are not discretely defined in Article 1 of the WISP, they are operationally defined in Article 3. Glover contends that the language in Article 1 of the WISP unambiguously allows for pain and suffering damages and that Article 3 does not preclude such an arbitration award. We agree with Glover.

Starting our analysis from the result reached by the arbitrator, we find that a rational inference exists from the language and words of the WISP that payments for pain and suffering were contemplated by the agreement. The definition of "Damages" includes payments for pain and suffering. Indeed, the plain language of Article 1 is explicit. The fact that Article 3 does not provide for a formula for calculating pain and suffering damages does not in itself preclude such an award.

IBP, nonetheless, attempts to skirt the definition of "Damages" provided in the WISP by arguing that awarding damages for "pain and suffering" does not align with the overall purpose of the WISP. IBP urges the Court to glean the purpose of the WISP from the waiver, language from the Texas Workers Compensation Act ("the Act"),[3] and the preamble to the WISP.[4] IBP argues that the waiver document merely promises "payments" which is something different from "damages"

---

[3] See TEX. LABOR CODE § 401.011 et seq..

[4] The Preamble to the WISP states in relevant part:

> By accepting the Program, an employee settles his or her negligence claim with the Company and waives any right of action at common law or under any statute to recover damages for personal injuries, or death, sustained in the course and scope of employment. The Program provides that any dispute shall be resolved by binding arbitration.(emphasis added).

6

under the WISP. IBP explains that the WISP tracks the benefits scheme of the Texas Workers Compensation Act, and therefore the purpose of the WISP is to provide payments similar to workers compensation benefits under the Act.

We conclude that IBP's arguments do not overcome the rational inference that an award for damages under the WISP includes "payments for . . . pain and suffering." First, the plain language of the WISP itself defeats IBP's argument that payments mean something different than "damages." The WISP is explicit that " 'Damages' means payments," which include payments for pain and suffering. In Article 2.01, the WISP states that IBP "will make payments for damages." Second, the very language of the waiver on which IBP relies to identify the scope of the arbitrator's authority defeats its argument that the arbitrator should have looked to the Act for the overall purpose of the WISP. The waiver states that IBP "does not provide benefits under the Texas Workers' Compensation laws." At best, the waiver precludes the arbitrator from referencing the Act in making award determinations. Moreover, the Arbitration Guidelines, incorporated into the WISP through Article 5.04, allow the arbitrator to rely on the Act only when "an issue arise[s] that is not covered by the Program."

Even assuming arguendo that Articles 1 and 3 create a conflict, which we believe they do not, we must affirm the arbitration award, so long as the arbitrator's interpretation can be rationally inferred from the letter and purpose of the WISP. See Nat'l Gypsum Co. v. Oil, Chem. & Atomic Workers Internat'l Union, 147 F.3d 399, 405 (5th Cir. 1998). In Nat'l Gypsum Co., we reviewed an arbitration award which seemed to present a conflict between two provisions of an agreement. The Company had a seven-day work week that provided for overtime on Saturdays and Sundays. The Company sought to change to a six-day work week which eliminated a day of overtime pay thus

7

causing a reduction in wages. The Union demanded arbitration claiming that the Company had violated the agreement between them. The arbitrator found in favor of the Union because it concluded that the Company had a duty to bargain for changes in wages under Article I, §5 of the agreement. The Company sought to vacate the award arguing that the arbitrator exceeded his authority because his interpretation of Article I, § 5 conflicted with the agreement's management rights clause and with Article I, § 7 which merely required the Company to "meet with" the Union. On appeal, this Court held that the arbitration award could be rationally inferred from the language of § 5. Id. at 403. This Court explained that "[t]o the extent that there is any ambiguity regarding the meaning of these two sections or a conflict between the two, the arbitrator was entitled to resolve it." Id. at 404. We further reasoned that "[t]he Company and the Union bargained for the arbitrator's interpretation of the Agreement not ours," and therefore enforced the award. Id. at 405.

Even though we found some tension between provisions of the Agreement in Nat'l Gypsum Co., we enforced the award because it was rationally inferable that "[s]ection 7 did not expressly preclude the arbitrator from interpreting § 5 to require bargaining," and we held that the "arbitrator had the authority to resolve this conflict." Id. at 404-05. From the language of the WISP in the instant case, including its definition for "Damages," there is a rational inference that damages include recovery for "pain and suffering." Similar to the situation in Nat'l Gypsum Co., Article 3, which enumerates the method for making payments, does not preclude that " 'damages' means ... payments for ... pain and suffering" as defined in Article 1. Moreover, just as the parties in Nat'l Gypsum Co. bargained for the arbitrator's interpretation of the agreement, the parties in this case also "bargained for arbitration to resolve [their] disputes." Because Article 1 defines "damages" as payments and then lists those payments to include "pain and suffering damages" we find a rational inference that Glover

8

is entitled to the arbitration award including pain and suffering damages. Because it was within the arbitrator's authority to resolve this conflict in favor of Glover, we affirm the district court's order enforcing the award.[5]

III.    Glover is not entitled to prejudgment interest and attorney's fees

Whether prejudgment interest is warranted in this case is a question governed by Texas law. See Executone, 26 F.3d at 1329. "Under Texas law, prevailing parties receive prejudgment interest as a matter of course." Id. As the district court noted, however, this rule may not apply when, for example, the arbitration agreement is all encompassing. In such a case, "intervention by the court to award additional relief would be inconsistent with the language and policy of the Federal Arbitration Act." Schlobohm v. Pepperidge Farm, Inc., 806 F.2d 578, 580-81 (5th Cir. 1986). Although the arbitration provisions in the WISP do not expressly state that any and all disputes arising from the WISP's application are subject to binding arbitration, we find that the WISP's comprehensive enumeration of those situations that do fall under its dispute resolution provisions forecloses the district court from awarding relief not otherwise awarded by the arbitrator himself.[6] We therefore, affirm the district court's decision not to separately award prejudgment interest.

---

[5] We reject IBP's reading of the district court's opinion in Hernandez v. IBP, Inc., No. 2:98-CV-306-J, slip op. (N.D. Tex July 12, 1999), where the plaintiff sought pain and suffering damages which an arbitrator had denied her. Nowhere in that opinion did the district court conclude that such damages are not allowed under the WISP.

[6] Section 5.01 of Article 5 (entitled "Dispute Resolution") provides the following: "An employee who is dissatisfied with a decision of the Company's Self-Administered Department concerning (i) the application of the Program to an injury, (ii) the amount or duration of the employee's payments under the program, (iii) the performance by the Company of its obligations under the Program or (iv) any interpretation of this Program by the Company, may file a written request for review of the decision . . . with the Manager, [O]ccupational Health and Safety, Amarillo, Texas." The manager's decision is appealable to the program administrator, whose decision is in turn appealable to the arbitrator.

9

We also affirm the district court's refusal to award Glover for his attorney's fees incurred enforcing the arbitrator's award. In <u>Executone</u>, the Appellant challenged the arbitrator's award denying relief on the grounds that the arbitrator had exceeded his powers. 26 F.3d at 1331. The district court upheld the award, but refused to compensate the Appellee for attorney's fees incurred enforcing the award. In so doing, we noted that "Executone's challenge . . . goes to the question of the arbitrator's authority," and that "Executone's position is not a frivolous one." <u>Id</u>. In this case, IBP is on a footing similar to Executone's, and we conclude that its argument against enforcement is also not frivolous; and therefore, we affirm the district court's denial of attorney's fees to Glover. <u>See Amalgamated Meat Cutters, Local 540 v. Great Western Food Co.</u>, 712 F.2d 122, 125 (5th Cir. 1983) ("A party to an arbitral award is not entitled to the attorney's fees it incurs in enforcing that award unless the noncomplying party's refusal to abide by the award was without justification.") (internal quotations omitted).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.