COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-314-CV

 

 

BANC
OF AMERICA INVESTMENT                                APPELLANTS

SERVICES,
INC., MICHAEL DEGOLIER, 

AND TERRY JOHNSON                                                                         

                                                   V.

 

REBECCA
DIANE LANCASTER AND                                        APPELLEES

CAROL
DENISE LUCKY, INDEPENDENT 

CO‑EXECUTRIXES
OF THE ESTATE OF 

MARIE LANCASTER, DECEASED                                                            

                                              ------------

 

           FROM
THE 342ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








In one issue, Appellants Banc
of America Investment Services, Inc., (ABAISI@), Michael
Degolier, and Terry Johnson (we refer to the three appellants collectively as
the ABrokers@) assert
that the trial court erred by refusing to confirm the portion of an arbitration
award granting costs and expenses to the Brokers.  Because the Federal Arbitration Act (AFAA@) does not
provide for, nor prohibit, the awarding of attorney=s fees as costs and expenses, and because we are required to give
almost total deference to an arbitration award, we are constrained to reverse
and render.  

II.  Factual and Procedural Background








This is the case of an
arbitration award of costs and expenses incurred in securing a hearing before
the arbitration panel.  Marie Lancaster
invested in securities through BAISI. 
After seeing the value of her investments decline sharply, she alleged
that she demanded certain action be taken, which, according to her, was refused
for a Agood length of time.@  Each time Lancaster opened one
of her three accounts, she signed an agreement that compelled her to arbitrate
disputes with BAISI, but did not require BAISI to arbitrate such disputes.  Based on a lack of mutuality compelling BAISI
to arbitrate such disputes, Lancaster filed suit against BAISI and certain of
its representatives.  The Brokers then
filed a petition for writ of mandamus, and after this court issued a
conditional writ of mandamus, the trial court ordered the case to arbitration
in accordance with the Acontract@ of the parties.  At the
insistence of BAISI, the dispute was arbitrated under the rules promulgated by
the National Association of Securities Dealers (ANASD@), and by a
panel of three arbitrators appointed by NASD Dispute Resolution.

Lancaster died before the
arbitration hearing, and she was succeeded by her daughters Rebecca Diane
Lancaster and Carol Denis Lucky, Independent Co-Executrixes of the Estate of
Marie Lancaster, Deceased (the AExecutrixes@). 

The arbitration panel=s award denied the relief sought by both sides but awarded $14,310.24
to the Brokers for costs and expenses incurred by them in securing a hearing of
the claims before the arbitration panel. 
This portion of the arbitrator=s award was not confirmed by the trial court.  This appeal followed.

A.  The Arbitration Agreements








When Lancaster originally
opened her account, she signed two account agreements containing mandatory
arbitration provisions.  One was in a
Brokerage Account Application and Customer Agreement.  The other was in an IRA Application and
Customer Agreement.  When she moved her
account from Austin to Fort Worth, Lancaster signed a third account agreement
containing a mandatory arbitration provision. 
This was in a Money Account Application and Customer Agreement.  Throughout the pendency of this case,
Lancaster denied the enforceability of these agreements.  Attorney=s fees are not mentioned in connection with the arbitration in any of
the three documents signed by Lancaster.

B.  The Proceedings Below

Lancaster filed suit alleging
causes of action for violation of the DTPA, the Texas Securities Act, and
breach of fiduciary duty.

The Brokers initially
responded with a motion to compel arbitration and to stay all proceedings, and
an original answer.  They filed a
business records affidavit proving up the arbitration agreements and citing the
language in the agreements signed when Lancaster opened her three investment
accounts with BAISI, requiring her to arbitrate in accordance with NASD by laws
and the NASD Code of Arbitration Procedure. 
On June 18, 2004, the trial court held a hearing on the Brokers= motion.  However, during the
next five months, the trial court did not rule on the Brokers= pending motion.  The trial
court first ordered the parties to mediation in lieu of ruling.  The Brokers sought relief from the trial
court=s failure to rule on the pending motion by filing an appeal and
mandamus petition in this court.[2]  They were unsuccessful, and the parties
mediated but did not settle.








The trial court then ordered
that the parties take Lancaster=s deposition in lieu of ruling on the Brokers= pending motion to compel arbitration. 
The Brokers again sought mandamus relief from the trial court=s failure to rule on the pending motion, which was granted.[3]  This court did not stop the taking of the
deposition, but it did give the trial court fifteen days to rule on the pending
motion to compel arbitration. 
Subsequently, the trial court signed an order compelling arbitration and
staying all proceedings in accordance with the FAA. See 9 U.S.C.A. '' 1-16 (West 1999). 

C.  Death of Lancaster and the Substitution of
Executrixes

Although arbitration was
compelled in November 2004, Lancaster did not take further action until March
8, 2005, when she filed her arbitration request with the NASD.  The trial court=s order compelling arbitration ordered the parties to arbitrate in
accordance with the contract language (meaning the NASD Code of Arbitration
Procedure).  In connection with this
filing, Lancaster signed an NASD Arbitration Uniform Submission Agreement
agreeing to Asubmit the
present matter in controversy, as set forth in the attached statement of claim,
answers, and all related counterclaims and/or third-party claims which may be
asserted, to arbitration. . . .@ 








Two months later, notice was
received that Lancaster had died.  All
three contracts Lancaster had signed bound not only her but also her heirs,
executors, and administrators, so upon her death, substitution of her estate=s representative was required. 
Accordingly, notice was given that the Executrixes would substitute as
the claimants.

D.  Arbitration and Confirmation

The arbitration was held, and
the NASD Dispute Resolution Award was as follows: (1) the Executrixes should
take nothing on their claims, which were dismissed with prejudice, (2) the
Brokers should recover $14,310.24 in Acosts and expenses,@[4] (3) all remaining costs of arbitration, including attorney=s fees, were to be borne by the party incurring them, (4) the
individual Brokers= records in
the NASD=s Central Registration Depository (CRD) would not be expunged, and (5)
all other relief not expressly addressed in the award would be denied.








At the hearing to confirm the
arbitration award, the Brokers asked that the award be confirmed in all
respects, while the Executrixes did not ask that the award be confirmed or
vacated.  Instead, they asked that a
judgment be entered that all parties take nothing.  The trial court asked if he could pick and
choose among the elements of the arbitration award in deciding what to do, and
the Executrixes= lawyer said
he could.  The Brokers= lawyer said he could not.  The
trial court entered a final judgment in accordance with items 1, 3, and 5 in
the award.  The final judgment did not
mention the Brokers= request for
expunction[5]
or the award of $14,310.24 in Acosts and expenses.@  

The Brokers have appealed to
this court to ask that we reverse the final judgment that was entered and
confirm the arbitration award in its entirety.

III.  Award of Attorney=s Fees

In one issue, the Brokers
assert that the trial court=s failure to confirm their award of costs and expenses[6]
was error because none of the limited grounds for failing to confirm the award
were met by the Executrixes.  We
agree.    

A.  Standard of Review








The court=s standard of review of the trial court=s decision is de novo.  McIlroy
v. PaineWebber, Inc., 989 F.2d 817, 819-20 (5th Cir. 1993).  This de novo standard is intended to give
this court full power to give strong deference to the award.

In two recent cases, the
Fifth Circuit has discussed the application of the de novo standard of review
to be applied when a party dissatisfied with an arbitration award sought
vacatur of the award.  See Brabham v.
A.G. Edwards & Sons, Inc., 376 F.3d 377 (5th Cir. 2004); Action
Indus., Inc. v. U.S. Fid. & Guar. Co., 358 F.3d 337 (5th Cir. 2004).  

In Brabham, the
plaintiff sued his brokerage firm in court, and the firm successfully moved to
compel arbitration before the NASD.  The
plaintiff was dissatisfied with the size of the award and sought vacatur from
the district court.  The district court
vacated the award and the Fifth Circuit reversed, pointing out the standard of
review afforded to arbitration awards:

We
review de novo an order vacating an arbitration award.  Brook v. Peak Int=l,
Ltd., 294 F.3d 668, 672 (5th Cir. 2002). 
Our review of the award itself, however, is exceedingly
deferential.  See Glover v. IBP., Inc.,
334 F.3d 471, 473 (5th Cir. 2003).  We
can permit vacatur of an arbitration award only on very narrow grounds, see
id. at 473-74.

 

Brabham, 376
F.3d at 380.  Later in the opinion, the
grounds for vacatur were further explained:








Because
we must remain exceedingly deferential to arbitration, we can permit vacatur of
an award only on very narrow grounds.  See
Glover, 334 F.3d at 473-74. 
Multiplying the grounds for vacatur would be inconsistent with the
deference we must accord an arbitrator=s decisions, see id. at
473.  Therefore, courts should carve out
new grounds for vacatur reluctantly and carefully.  See Westerbeke Corp. v. Daiharsu Motor Co.,
304 F.3d 200, 222 (2d Cir. 2002).

 

We see no compelling reason to recognize
arbitrariness and capriciousness as an independent nonstatutory ground for
vacatur.  Our established rules of
deference foreclose all but the most limited review.  Arbitrators need not give reasons for their
awards.  McIlroy, 989 F.2d at
821.  Even when arbitrators do provide a
rationale for their awards, courts may not review that reasoning.  See Anderman/Smith, 918 F.2d at 1219
n.3.  Uncertainty about arbitrators=
reasoning cannot justify vacatur, for a court must resolve all doubts in favor
of arbitration.  See Action Inds.,
Inc. v. U.S. Fid. & Guar. Co., 358 F.3d 337, 343 (5th Cir. 2004).  Given these constraints, judicial review of
an award=s
rationality must be confined to situations in which the party challenging the
award can prove that clearly applicable law or the parties=
contract indisputably dictates a contrary result.

 

Id. at
385.

In Brabham, the court
did recognize a nonstatutory ground for vacatur of an arbitration awardCAmanifest disregard@ of the law.  Manifest disregard
Ameans more than error or misunderstanding with respect to the law.@  Id. at 381.  The arbitrators must have Aappreciated the existence of a clearly governing principle but decided
to ignore or pay no attention to it.@  Id. at 381-82.  Finally, Athe governing law ignored by the arbitrators must be well defined,
explicit, and clearly applicable.@  Id. at 382.








In Action Industries,
the Fifth Circuit addressed the issue of whether state or federal standards for
vacatur of arbitration awards should be applied.  In that case, the parties seeking vacatur
asked the trial court to apply broader standards of vacatur available under the
Tennessee Uniform Arbitration Act, rather than the more narrow grounds
available under the FAA.  Rejecting
application of the broader Tennessee standards, the Fifth Circuit held that AFAA rules apply absent clear and unambiguous contractual language to
the contrary.@  Action Indus., 358 F.3d at 341 (citing
Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59, 115
S. Ct. 1212, 1217 (1995)).

Action Industries also explained the limitations of vacatur under 9 U.S.C.A. ' 10(a)(4) (where the arbitrators Aexceeded their power@).  The court held,

Limitations
on the arbitrators=
scope of power must be clear and unambiguous or else they will be construed
narrowly.  See Mastrobuono v. Shearson
Lehman Hutton, 514 U.S. 52, 62, 115 S. Ct. 1212, 131 L.Ed. 2d 76
(1995).  A reviewing court examining
whether arbitrators exceeded their powers Amust resolve all doubts in
favor of arbitration.@  Brook v. Peak Int=l,
Ltd., 194 F.3d 668, 672 (5th Cir. 2002).

 

Id. at
343.

B.  The Award in Question

After considering the
pleadings, the testimony, and evidence presented at the hearing, the
arbitration panel decided the issues submitted for determination, in part, as
follows:








1.     The Panel finds no recoverable injury on the part of the
Respondents, and the Claimant=s estate shall take nothing
on its claims.  The claims are dismissed
with prejudice and denied in their entirety.

 

2.     The Panel finds that Respondents incurred substantial expense in
assuring that the matter be heard in the forum which was agreed upon contractually.  Therefore, Claimants Rebecca Diane Lancaster
and Carol Denise (Lancaster) Lucky, Independent Co-Executrixes of the Estate of
Marie Lancaster, Deceased, are jointly and severally liable for and shall pay to
the Respondents, Banc of America Investment Services, Inc., Michael Dennis
Degolier and Terry Wayne Johnson, the sum of $14,310.24 as partial compensation
for costs and expenses incurred in the defense of the claims made, particularly
in relation to the expenses of securing hearing of the claims in the forum
contractually agreed upon.

 

3.     All remaining costs of arbitration, including any attorney=s
fees, shall be borne by the party incurring that cost, unless specifically
enumerated in this decision.  

 

Hence, the arbitration panel
awarded the Brokers a portion of the attorney=s fees incurred in getting the claim out of state court and before the
arbitration panel, that is, Asecuring hearing of the claims@ in the arbitration setting.    

C.  The Confirmation Hearing

At the confirmation hearing,
the Executrixes presented no witnesses, nor did they present the arbitration
proceeding record.  However, they did
present two exhibits.  Exhibit 1 was an
authenticated copy of the arbitration award. 
Exhibit 2 was a notice to creditors filed in a probate court proceeding.  








 

D. The Applicable Law 

The Brokers assert that
because the arbitration was governed by the FAA, the court must confirm the
award Aunless it is vacated, modified or corrected on the limited grounds
permitted under sections 10 and 11 of the FAA.@  See
9 U.S.C.A. '' 10,
11.  Section 10 indicates that the award
may be vacated where (1) it was procured by corruption, fraud, or undue means,
(2) there existed evident partiality or corruption in the arbitrators, (3) the
arbitrators were guilty of misconduct in specified areas, or (4) the
arbitrators exceeded their powers, or so imperfectly executed them that a
neutral, final, and definite award was not made.  Id. ' 10.  Additionally, section 11
of the act deals with corrections of an arbitration award due to an  Aevident material miscalculation of figures.@  Id. ' 11(a).  

The Executrixes first respond
that the FAA is inapplicable to the arbitration in this matter.  However, the court, in its order compelling
arbitration, found that the case was covered by the FAA, and an examination of
the record does not reveal that this finding by the court was challenged;
hence, the complaint in this regard has been waived.








An examination of the FAA
reveals that 9 U.S.C.A. ' 2 does not
mention the award of attorney=s fees.  9 U.S.C.A. ' 2.  Therefore, while the FAA
makes no provision for the awarding of attorney=s fees, it also does not prohibit the awarding of attorney=s fees.  Because neither party
has challenged the trial court=s decision that the FAA applies, we need not turn to the Texas
Arbitration Act or common law.  Of the
four vacatur grounds enumerated in the FAA, only the fourth oneCwhether the arbitration panel exceeded its powersCis presented in this case.  See
id. ' 10(4).    

E. Whether the Arbitration
Panel Exceeded Its Powers 

The Texas Supreme Court has
stated that the Aauthority of
arbitrators is derived from the arbitration agreement and is limited to a
decision of the matters submitted therein either expressly or by necessary
implication.@  Gulf Oil Corp. v. Guidry, 160 Tex.
139, 143, 327 S.W.2d 406, 408 (1959). 
Arbitrators therefore exceed their powers when they decide matters not
properly before them.  Barsness v.
Scott, 126 S.W.3d 232, 241 (Tex. App.CSan Antonio 2003, pet. denied). 
A mistake of fact or law in the application of substantive law is
insufficient to vacate an arbitration award. 
Vernon E. Faulconer, Inc. v. HFI, Ltd. P=ship, 970 S.W.2d 36, 39 (Tex.
App.CTyler 1998, no pet.).     








The Executrixes first assert
that the arbitration panel exceeded its authority by making an award against
them in their representative capacities. 
The sum of the Executrixes= argument is that any award should have been against the Estate of
Marie Lancaster.  However, a decedent=s estate is not a legal entity and may not properly sue or be sued as
such.  Austin Nursing Ctr., Inc. v.
Lovato, 171 S.W.3d 845, 849 (Tex. 2005). 
Moreover, a suit seeking to establish the decedent=s liability on a claim and subject property of the estate to its
payment should ordinarily be instituted against the personal
representatives.  Price v. Estate of
Anderson, 522 S.W.2d 690, 691 (Tex. 1975). 
Hence, we hold the award of attorney=s fees was properly against the Executrixes in their representative
capacities.            








The Executrixes next argue
that because the first finding in the award by the arbitration panel found that
there was no recoverable injury on the part of the Brokers, the Brokers could
not then be awarded attorney=s fees based on no recoverable injury. 
Returning to the exact language of the award, we conclude that it is
apparent that the $14,310.24 was awarded to partially compensate the Brokers
for defending the claims and Aparticularly in relation to the expenses of securing hearing of the
claims in the forum contractually agreed upon,@ to wit, the arbitration panel. 
In this regard, the Executrixes point to the Brokers= motion to confirm the arbitration panel=s award, where they asserted that the FAA, Texas Arbitration Act, and
common law are grounds for affirming the attorney=s fees award.  However, they
also point out that the FAA makes no express provisions for an award of
attorney=s fees, that the Texas Arbitration Act provides for an award of
attorney=s fees only if it is provided for in the agreement to arbitrate or is
allowed in a civil case for a pleaded cause of action, and that no common law
right to attorney=s fees in
this case existed.  Because we have held
above that the FAA is applicable and it does not prohibit an award of attorney=s fees, we hold that the arbitration panel did not exceed its
authority by awarding the Brokers attorney=s fees incurred by them in securing a hearing of the claims before the
arbitration panel.  

Lastly, the Executrixes
contend that the arbitration panel exceeded its authority by holding the
Executrixes jointly and severally liable to pay the Brokers= attorney=s fees.  The Executrixes rely on their prior two
arguments in support of this contention as well.  Because we have held that the award of
attorney=s fees was properly against the Executrixes in their representative
capacities and that the arbitration panel did not exceed its authority by
awarding the Brokers attorney=s fees, we also hold that the arbitration panel did not exceed its
authority by holding the Executrixes jointly and severally liable in their
representative capacities to pay the Brokers= attorney=s fees.








As discussed above, the
arbitration agreements, like the FAA, do not mention the award of attorney=s fees.  But again, the
agreements do not expressly prohibit such an award either.  We therefore hold that the Executrixes failed
to show that the arbitration panel exceeded its authority by deciding a matter
not properly before it and awarding attorney=s fees to the Brokers.              F. Manifest Disregard of the Law     

The remaining question presented
to us is whether the inherent presumption that the arbitration panel=s award was appropriate is overridden by the apparent absence of
authority in the FAA to award attorney=s fees, that is, did a manifest disregard of the law occur?  The party seeking to vacate an arbitration
award bears the burden of demonstrating that the arbitration panel acted in
manifest disregard of the law.  Pheng
Invs., Inc. v. Rodriquez, 196 S.W.3d 322, 331 (Tex. App.CFort Worth 2006, no pet.).    

Thus, the Executrixes were
required to show that the arbitration panel appreciated the existence of some
governing law disallowing the awarding of attorney=s fees, but decided to ignore or pay no attention to it.  See Brabham, 376 F.3d at 381-82.  However, the Executrixes cannot meet this
burden because they failed to file any record of the arbitration proceedings at
the confirmation hearing.  Without such a
record, we are unable to ascertain what, if any, applicable law was presented
to the arbitration panel that would have prohibited them from awarding the
Brokers attorney=s fees.  In other words, we cannot determine whether
the arbitration panel manifestly disregarded the law in awarding the Brokers
attorney=s fees because we do not have a record of the proceedings before the
arbitration panel.








Because the Executrixes
failed to meet their burden of demonstrating that the arbitration panel acted
in manifest disregard of the law, we are constrained to hold that the trial
court erred by refusing to confirm the portion of the arbitration award
granting attorney=s fees in
the form of Acosts and
expenses@ to the Brokers.  Our holding
should in no way be read to mean that we agree with the decision of the
arbitration panel to award the Brokers attorney=s fees.  Accordingly, we sustain
the Brokers= sole issue.

IV. Conclusion

Having sustained the Brokers= sole issue, we reverse the trial court=s judgment and render the award of $14,310.24 for Acosts and expenses@ as set out in the arbitration award. 
See Tex. R. App. P.
43.2(c).       

 

 

BOB MCCOY

JUSTICE

 

PANEL B:   LIVINGSTON, WALKER, and MCCOY, JJ.

 

LIVINGSTON,
J. concurs without opinion.

 

DELIVERED:
August 31, 2007











[1]See Tex. R. App. P. 47.4.





[2]Banc
of Am. Inv. Servs., Inc. v. Lancaster, No. 2-04-223-CV, 2004 WL
1879597 (Tex. App.CFort Worth Aug. 24, 2004, no pet.)
(mem. op.); In re Banc of Am. Inv. Servs., Inc., No.
2-04-229-CV,  2004 WL 1690245 (Tex. App.CFort Worth July 23, 2004, orig.
proceeding) (mem. op.).      





[3]In re
Banc of Am. Inv. Servs., Inc., No. 2-04-272-CV, 2004 WL 2416561 (Tex. App.CFort Worth Oct. 28, 2004, orig.
proceeding) (mem. op.). 





[4]This portion of the award will be
discussed in greater detail later in this opinion.  





[5]The Brokers= expunction request is not an issue
presented in this appeal.





[6]Although the Brokers were careful
to follow the language of the arbitration award and to dispute the trial court=s failure to confirm Acosts and expenses,@ it is clear from the context that
this was really an award of attorney=s fees related to cost of moving the proceedings to
arbitration.  Accordingly, we requested
post-submission briefing relating to an award of attorney=s fees.