Opinion issued
March 29, 2012



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-11-00073-CV

———————————

PETROBRAS AMERICA, INC., PAI PRSI TRADING GENERAL LLC,
AND PAI PRSI TRADING LIMITED LLC, Appellants

V.

ASTRA
OIL TRADING NV, ASTRA GP, INC., ASTRA TRADECO. LP LLC, AND
PASADENA REFINERY HOLDING PARTNERSHIP, Appellees



 



 

On Appeal from the 129th
District Court

Harris County, Texas



Trial Court Case No. 2010-22326

 



 

 

MEMORANDUM
OPINION

          Appellants,
Petrobras America, Inc., PAI PRSI Trading General
LLC, and PAI PRSI Trading Limited LLC, appeal the trial court’s judgment
confirming a final arbitration award rendered against them in favor of appellees,
Astra Oil Trading NV, Astra GP, Inc., and Astra TradeCo
LP LLC.  Identifying four issues,
Appellants challenge certain provisions of the confirmation judgment.  Appellants assert that the trial court erred
in granting Appellees’ motion to confirm the arbitration award and in denying
their motion for partial vacatur of the award.  In support of their contention that certain
provisions of the arbitration award should be vacated, Appellants aver that the
arbitration panel, which rendered the underlying final arbitration award,
engaged in misconduct and exceeded its authority.  Appellants also contend that Appellees procured
a portion of the arbitration award by fraud.

          We
affirm.

Background Summary

          In
September 2006, a joint venture was started between Pasadena Refining System,
Inc. (“PRSI”), a corporation that owns a refinery in Pasadena, Texas, and PRSI
Trading Company LP (“the Trading Company”), an associated partnership, which
supplied the refinery with feed stocks and crude oil.  Petrobras America
Inc. (“Petrobras America”) and appellee, Astra Oil
Trading NV (“Astra Oil”) each owned one-half of the shares in PRSI.  A Shareholders Agreement governed PRSI’s
operations.  

          Petrobras America’s subsidiaries, PAI PRSI Trading General
LLC and PAI PRSI Trading Limited LLC (“the Petrobras
Partners”), owned one-half of the Trading Company.  Astra Oil’s subsidiaries, Astra GP, Inc. and
Astra TradeCo LP LLC (“the Astra Partners”) owned the
other half interest.  A Partnership Agreement
between the co-owners governed the Trading Company’s operations.

          By
2008, substantial disagreements arose between the Petrobras
entities (hereinafter, collectively referred to in the singular as “Petrobas”) and the Astra entities (hereinafter,
collectively referred to in the singular as “Astra”) regarding the operation
and management of PRSI and the Trading Company. 
On June 19, 2008, Petrobas invoked the
arbitration provisions in the Shareholders Agreement and Partnership Agreement
(collectively, “Agreements”) by filing a demand for arbitration with the
American Arbitration Association.  Petrobras claimed that Astra had breached certain
provisions of the Agreements and alleged that Astra had breached its fiduciary
duties owed to the Trading Company.  

          The
Shareholders Agreement and the Partnership Agreement gave Astra the right “to
put” for sale to Petrobras the interests owned by
Astra in PRSI and the Trading Company.  The
Agreements contained pricing formulas to calculate the amount that Petrobras would be required to pay for Astra’s interests
when Astra properly exercised its put rights. 


          Astra
asserted its put rights under the Agreements, forcing a buyout of Astra’s
ownership interests and leaving Petrobras with
complete ownership of PRSI and the Trading Company.  The parties disagreed regarding whether Astra had
validly exercised its put rights.  They
also disagreed regarding the proper valuation of Astra’s interests in the joint
venture.  These disputes were added to the
arbitration.  

          On
October 24, 2008, the Arbitration Panel (“the Panel”) issued an interim
determination in which it concluded that Astra had properly exercised its put
rights under the Agreements.  The Panel stated
that “[a]ll remaining issues in this arbitration
shall be presented at [the] hearing” set to begin February 3, 2009.  This would include a decision regarding when
and how much Petrobras would be required to pay Astra
for its interests.  

          After
the interim decision, Petrobras amended its
arbitration demand adding, inter alia, “[Astra] must . . . account for any
trading activity conducted by traders seconded to the Trading Company that was
not on behalf of the Trading Company.”         Astra answered and asserted a number of
counterclaims.

          At
the time, Astra Oil and Petrobras America were
guarantors of the Trading Company’s $500 million line of credit extended by BNP
Paribas.  The Trading Company allowed the
credit facility to expire without fully repaying BNP Paribas.  As a result, on November 3, 2008, each of the
guarantors on the line of credit—Astra Oil and Petrobras
America—were
required to make guarantee payments to BNP Paribas of approximately $156 million.
 To pay BNP Paribas, Astra Oil had funds
transferred from the account of its Swiss subsidiary, AOT Holding Ltd, which
maintains a joint New York bank account with its sister company, AOT Trading AG.  Astra Oil directed AOT Holding to wire the
funds directly to BNP Paribas’s New York bank account.  AOT Holding wired the funds from the joint
account it held with AOT Trading AG to BNP Paribas’s account.

          The
Partnership Agreement provides that the Petrobras Partners
must provide indemnity for “all indebtedness of [the Trading Company] that
Astra may have guaranteed.”  Because the Arbitration
Panel’s October 24, 2008 decision effectively assured Astra Oil that it would
eventually recover the price of its put-option rights, Astra asserted a
counterclaim seeking immediate reimbursement of the $156 million guarantee
payment Astra Oil had made to BNP Paribas. 

          On
November 14, 2008, the Arbitration Panel issued a scheduling order, which
included a deadline for propounding and responding to requests for production
of documents.  Recognizing the expedited
nature of the proceedings, the Panel did not permit interrogatories,
depositions, or requests for admission as part of the discovery process.  All requests for production of documents were
to be propounded by November 26, 2008, with responsive documents to be produced
by December 17, 2008.  

          The
parties sent requests for production to one another.  In response, Astra produced 60,000 pages of
documents and Petrobras produced over 600,000 pages.  Anticipating that Petrobras
would soon have full ownership of PRSI and the Trading Company, Astra also gave
38 boxes of documents to Petrobras containing PRSI’s
and the Trading Company’s tax, accounting, and trade records.

          In an
email to Astra’s counsel on January 17, 2009, Petrobras’s
counsel identified a number of discovery items to be addressed before
arbitration, including the following: 

Trading records—[Petrobras and its subsidiaries] do not believe that [Astra]
ha[s] produced trading documents and records for the trades made from September
1, 2006 through approximately July 2008. 
I told you there were about 20 trades in which Astra or its affiliates
sold products to the Trading Company. 
You asked if I could send you a list of the relevant trades, and I did
so earlier today.  [Astra] ha[s] not
produced documents related to the trades/acquisition by Astra and its
affiliates of the products ultimately sold to the Trading Company.  You agreed to look into this issue and give
me a response by 10 am on January 19th.  

 

          Petrobras was seeking the trading documents to support its breach
of fiduciary claim.  Petrobras
asserted that Astra had breached its fiduciary duty by means of loaning, or
“seconding,” its employees to the Trading Company.  Petrobras alleged
that these seconded employees engaged in improper trading activities that
amounted to self-dealing by Astra. 
Specifically, Petrobras relied on the fact
that, in a number of transactions, seconded Astra employees had purchased
petroleum product for the Trading Company from Astra Oil, which had purchased
the product from an outside source.  Petrobras alleged that when it resold the petroleum to the
Trading Company, Astra made a profit.  Petrobras asserted that such transactions deprived the
joint venture of profits that it would have realized had the Trading Company
purchased the petroleum product directly from the outside source.  Petrobras alleged
that Astra’s outside purchase and resale to the Trading Company of petroleum
products usurped the joint venture’s corporate opportunities and amounted to
self-dealing.  It averred that such
conduct constituted a breach of the fiduciary duty that Astra owed the joint
venture.  

          Petrobras had in its possession documentation regarding
what the Trading Company had paid Astra for the petroleum products.  But, as referenced in the above email, Petrobras sought Astra’s trade documents, particularly the
“deal sheets,” showing how much Astra had paid the outside sources for the
petroleum product it later resold to the Trading Company.  Petrobras asserted that
it needed the trade documents to support its claim that Astra had usurped an
opportunity for the joint venture and had engaged in self-dealing, thereby
breaching its fiduciary duty.  

          On
January 19, 2009, Astra’s counsel responded to Petrobras’s
email, in relevant part, as follows:

          Discovery Issues: First, I would
note that the Panel’s order regarding discovery states that it shall be
“reasonable in scope and burden, and consistent with the expedited nature of
arbitration.”  We believe that a number
of your original requests are inconsistent with this directive, but we produced
a significant amount of information nonetheless.  The five additional issues you address below
are, for the most part, beyond the scope of what is reasonable discovery in
connection with this proceeding.  In many
instances, these items appear to be mere “fishing expeditions” that are
distractions from the central issues in the case.  Nonetheless, I indicated to you that we would
work with you to produce as much of the information as was appropriate and
possible under the circumstances.  Your
suggestion in this and other emails that we have intentionally withheld
information is without basis.

 

. . . .

 

          Trading Records: Our
conversation on January 8, 2009 was the first time your client articulated a
purported claim that Astra’s traders at PRSI [Trading] had made trades from
September 2006 to September 2008 that were for the sole benefit of Astra and
harmed PRSI [Trading], allegedly in breach of Astra’s duty to PRSI [Trading].  January 17 was the first time you identified
the specific trades that you claim are at issue.  I have spoken to my client and am told that
producing the entire trading file for some of these trades would be enormously
burdensome, as in some instances the paper trail is several inches to foot
high.  We can, however, agree to produce
a summary of each trade that should give you the information you need regarding
the Astra side of those trades, and we will do so this week.

 

          On January
19, 2009, Petrobras filed a motion to compel, requesting¸
inter alia, the Panel to order Astra to “produce all relevant and responsive
documents.”  The motion generally asserted
that Astra had not produced documents responsive to Petrobras’s
requests for production and identified specific categories of documents.  The motion averred that Petrobras’s
counsel had “expressed concern” to Astra’s counsel “about the dearth of
documents produced by [Astra] regarding trading/hedging activities.”  Petrobras did not
specifically mention that it sought to compel the trade documents, or more
specifically “the deal sheets,” which indicate the price at which Astra had
purchased the petroleum product later sold to the Trading Company.  Petrobras also
filed a motion for continuance requesting the Panel to postpone the February 3 arbitration
hearing “for at least 90 days” to permit Petrobras to
obtain and analyze the documents that it claimed Astra was wrongfully withholding.  

          Before
the arbitration hearing, Astra and Petrobras submitted
the witness statements of those witnesses who would testify at the Arbitration.  Among those was the statement of Irek Kotula submitted by
Astra.  Kotula
stated that he was a trader for Astra and had managed the trading activities
for the Trading Company from September 2006 until March 2008.  With respect to the trading activities, Kotula stated, in relevant part, as follows:

To protect the Trading Company, I enacted a very strict
policy to be followed by all traders:

 

The book to which each trade
belongs had to be established in the moment of doing the deal, and written
clearly on [the] deal sheet.

 

Any deal that
involved a sale from Astra book [sic] to the Trading Company or vice versa had
to be supported by independent market valuation, preferably from brokers, in
writing supporting the price levels.

 

Additionally, in order to remove
any possibility of doubt, we decided that in case of purchase by the Trading
Company, we would discount the purchase price below market.

 

In a case where the Trading
Company was selling to Astra, we did it strictly at market level, and if the
Trading Company was the only possible supplier, we recognized this by paying a
premium to the market.  

 

Most of these deals were
documented, and the documents should all be in the Trading Company deal files
at the Refinery.  If traders took
positions as Astra and then the Refinery later had a need for the product, then
above rules applied.

 

In addition, in order to avoid misunderstandings, two
Trading Company board members—Sergio
Baron from Petrobras and Alberto Feilhaber
from Astra—were
copied on all deals done by the Trading Company.  When they had any questions, the traders
provided them with explanations.  I
remember only a limited number of deals about which questions were raised and,
in each instance, the explanation was acceptable to Mr. Baron and/or Mr. Feilhaber. 

 

From the beginning, Petrobras
had their own trader in the Trading Company, who was always involved in major
decisions and was aware of all third-party trading Astra was doing, as well as
deals involving trades between Astra and Trading Company.  Prior to this arbitration, I have never heard
a word of dissent or complaint at the operating trade level of the Trading
Company regarding any of Astra’s trades. 
This includes the present head of Trading Company’s trading team,
Fernando Assad, who works for Petrobras.  

 

          Astra also
submitted the witness statement of Alberto Felhaber,
its Vice President for Latin America Trading. 
With respect to the trades involving seconded Astra employees, Feilhaber stated, in relevant part, as follows:

To the best of my knowledge, at no time during the period
between September 2006 to September 2008, did any trader make a trade for
Astra’s sole benefit that could have been made for the benefit of PRSI.  

 

The traders were given specific instructions regarding
how trades were to be conducted.  A copy
of the trading policies developed and the board minutes are attached
[hereto].  In addition, other rules were
put in place to insure that any trade was communicated to the head of trading
for Petrobras, Sergio Baron.  In this way, we insured that all
opportunities were provided first to PRSI. 
I am not aware of any instance in which Astra took advantage of a trade
that PRSI could have done and wanted to do.

 

          Petrobras submitted the statement of its employee, Fernando
Assad, who had worked as a trader for the Trading Company since April
2007.  Assad stated that he believed it
was a conflict of interest for Astra to sell product to Trading Company.  He also stated that Astra benefited from the
sales.  He gave examples of two types of
transaction in which the Trading Company paid more for a product purchased from
Astra than if it had purchased the product directly from the market.  Assad averred as follows with regard to the trade
documents Petrobras sought to obtain from Astra:

I believe that [Astra’s] traders were making trades that
benefited [Astra] at the expense of the Trading Company.  This is one of the reasons that all of the
trading records have been requested from [Astra].  These records will help show whether the
trades made by [Astra] were appropriate and in the best interest of the Trading
Company.  [Astra] may have profited from
trades that it should not have profited from, as the Trading Company could
[have] made those trades directly.

 

. . . .

 

To determine the full impact and damage caused by
[Astra’s] traders and their conflicts of interest, I need to see additional
information about the specific trades . . . . 
I need to see the documentation related to [Astra’s] purchase of the
products at issue, before [Astra] sold those products to the Trading Company.

 

          Without
explanation, the Arbitration Panel denied Petrobras’s
motion to compel production of documents and its motion for continuance of the
arbitration hearing.  Petrobras
moved for reconsideration, but the Panel also denied that motion.  

          Beginning
on February 3, 2009, the Arbitration Panel conducted hearings lasting eight
days to determine Petrobras’s claims and Astra’s
counter-claims.  The parties presented 19
live witnesses and over 500 exhibits. 

          After
the hearings concluded, Petrobras and Astra filed
post-hearing opening and response briefs. 
In its opening post-hearing brief on pages 47 to 49, Petrobras
identified a number of issues that had not been raised in the arbitration
proceeding.  Petrobras
wrote, “Unwinding a joint venture is complicated.  Before the Panel issues a Final Award
requiring a closing on the Minority Puts, the parties must address several
outstanding issues.”  These issues
included tax-related matters, a loan from Astra Oil to the Trading Company, and
whether Astra was required to provide to Petrobras
various indemnities, representations and warranties as part of the put
transaction.  

          The Arbitration
Panel issued its Final Award of Arbitrators (the “Award”) in a 70–page ruling
on April 10, 2009.  The Award determined all
claims and requests for relief made by the parties.  The Panel denied all of Petrobras’s
claims against Astra; that is, it denied Petrobras’s
breach of contract and breach of fiduciary duty claims.  

          The
Award also included a provision entitled “Further Discovery,” which provides as
follows:

[Petrobras] contend[s] that [Astra]
must produce additional documents before the Panel can enter an award regarding
[Petrobras’s] breach of contract claims.  More broadly, [the Petrobras
entities] argue that [Astra has] abused the discovery process and must produce
additional documents before the Panel can issue the award.  [The Astra entities] respond to these claims
at length and argue that these discovery complaints are unfounded and meant to
delay the proceedings.

          

          The Panel
concludes [Petrobras’s] contentions on these
discovery matters are without merit and that further discovery is not
warranted.  The parties agreed to
arbitrate under the International Arbitration Rules of the ICDR, not litigate
in a court of law with full-blown judicial discovery procedures.  Indeed, the agreements to arbitrate agreed
upon by the parties in this particular case provided for expedited arbitration, requiring that the award be made within
sixty business days of the demand for arbitration.  After the Panel issued its Determination on
those threshold issues, and held a procedural hearing, the Panel issued its
Pre-Hearing Order No. 3 on November 17, 2008, to govern further proceedings,
including discovery.  That Order provided
in relevant part: “All document discovery sought in this matter shall be
reasonable in scope and burden, and consistent with the expedited nature of
arbitration.”  The Order also set a
deadline of January 6, 2009 for the completion of fact discovery, and provided
that any motions to compel be filed so that the fact discovery cutoff could be
preserved.  This tailored Order regarding
discovery is consistent with the ICDR’s International Arbitration Rules (which
the parties stipulated would apply) and the ICDR Guidelines for Arbitrators
Concerning Exchanges of Information, which apply to all ICDR arbitrations
commenced after May 31, 2008.  Those
Guidelines provide, in relevant part, that “[t]he tribunal shall manage the
exchange of information among the parties in advance of the hearings with a
view to maintaining efficiency and economy.”

 

          The Panel
also finds that the discovery authorized here was fully consistent with the
scope of discovery authorized by the Rules (see Rules, Articles 16.1, 19 and
36), and afforded all parties a reasonable and fair opportunity to prepare
their cases for hearing. The parties report that after Pre-Hearing Order No. 3
was issued, they reviewed “millions of pages of documents in several languages”
and produced over 660,000 pages of documents to each other.  After reviewing parties’ arguments, the Panel
concludes that the document discovery permitted in this arbitration was fully
consistent with the applicable Rules, and ICDR Guidelines, and was extensive by
the standards customarily applicable in international arbitrations.  We further find that the [Astra entities] have
complied with their discovery obligations and that no further discovery should
be ordered.  We also find that the
additional discovery sought by [Petrobras], if
permitted, would unreasonably delay the parties’ ability to obtain a Final
Award in this arbitration for no persuasive or necessary reason. . . .

 

          The Award also
contained a provision entitled, “Alleged Improper Trading” in which the Panel
held as follows:

[The Petrobras entities]
contend that [the Astra entities] breached their duties under the agreements
because respondents improperly profited from product trades its traders made
with the trading company.  The evidence
indicates, however, that the parties were well aware that [Astra’s] traders,
from time to time, traded directly with the trading company,
and that Petrobras’ Sergio Baron received deal sheets
for such trades.  In any event, the Panel
concludes that claimants have not shown that [Astra] breached any contractual
or other duties nor that any damages were caused by these trades.  Accordingly, [the Petrobras
entities’] claims based on the [Astra’s] trading activities are denied, and are
hereby dismissed with prejudice.

 

          The
Award required the Astra entities to transfer their ownership rights in PRSI
and in the Trading Company to Petrobras no later than
April 27, 2009.  In exchange, the Petrobras entities were required to make several payments
to the Astra entities, totaling $639,166,258.90, to be paid as follows:

·      
Petrobras America must pay
to Astra Oil the sum of $295,629,834, plus $8,301,293 in pre-Award interest, by
April 27, 2009, for [Astra Oil’s] interest in the PRSI refinery; 

 

·      
The Petrobras Partners
must pay to the Astra Partners $85,367,385 on September 17, 2009, and
$85,367,384 on September 17, 2010, for the subsidiaries interests in the
Trading Company.  Petrobras
America is required to guarantee the payments of the subsidiaries;

 

·       The Petrobras Partners must pay to Astra Oil the indemnity
obligation of $156,442,878.93, plus $3,364,593 in pre-Award interest, by April
27, 2009.  This is reimbursement to Astra
Oil Trading for a payment it made to the Trading Company’s financing bank
pursuant to a guarantee of the Trading Company’s debts given by Astra Oil;

 

·       The Petrobras entities shall pay to the Astra entities, by
April 27, 2009, the sum of $3,927,140 to reimburse the Astra entities for their
legal fees incurred in connection with the arbitration, an additional $732,501
to reimburse the Astra entities for their related legal expenses, and
$33,249.97 to reimburse the Astra entities for amounts they overpaid to the
International Centre for Dispute Resolution; and          

 

·      
All sums not paid when due under
the Award shall accrue post-Award interest at a rate of 5% compounded annually
from and after the date the sums were due.

 

          The Award
also ordered that all of Astra’s ownership interests in PRSI and the Trading
Company “shall be deemed transferred” to the respective Petrobras
entities by April 27, 2009. 

          The
Award addressed the additional issues raised by Petrobras
on pages 47 to 49 in its opening post-hearing brief.  In this regard, the Award provides as
follows:

The parties disagree concerning the manner and timing of
completing the Minority Put transaction, with [Petrobras]
insisting that several additional issues must be addressed prior to any
closing, (Claimants’ Post-Hearing Op. Br., 47–49), and respondents insisting that no remaining
issues exist which should cause any further postponement of the closing.

 

          We have
previously held [in the interim Award], and confirm herein, that respondents
effectively exercised the Minority Puts on July 1, 2008.  Articles 5.3 and 9.4 of the Shareholders’
Agreement and Partnership Agreement, respectively, contemplate that the
resulting Minority Put transaction should have been closed within ninety days
of the date of the decision giving rise to the exercise of the Minority Put,
i.e., by mid-September 2008.  This has
not happened.  Rather, it is now April
2009, no·amounts have been paid on the Minority Put
transaction by claimants, and claimants now seek to delay any closing—and their payment—for some unspecified
additional period of time to pursue various additional closing-related issues,
none of which are pleaded in their Second Amended Demand for Arbitration.
(Compare Second Amended Demand with Claimants, Post-Hearing [Brief], 47–49.)  We find that such additional delays are not
permissible under the relevant agreements.

 

          The Award also
discussed Article 5.3 of the Shareholders Agreement, which provides, 

At the Minority Put Closing, Astra shall cause the
following to occur: (i) delivery of all the shares of
stock and Ownership Interest in PSRI . . .,
duly endorsed with such endorsements guaranteed, free of all liens, security
interests and encumbrances, and (ii) such other documents and assignments as Petrobras may reasonably request.

 

At the Minority Put Closing, Petrobras
shall cause the following to occur: (i) payment of
the Minority Put Price, (ii) the release or indemnity of any and all
indebtedness of PRSI that Astra may have guaranteed or credit enhanced . . . ,
(iii) such other documents and assignments as Astra may reasonably request.  In addition, Astra and Petrobras
shall sign such other documents and assignments as the other Shareholder
reasonably requests.

 

The Partnership Agreement contains a similar provision in
Article 9.4.  

          With regard
to these provisions, the Panel stated in the Award as follows: 

We find that the provisions of Article 5.3 of the
Shareholders’ Agreement and the corresponding provision in Article 9.4 of the
Partnership Agreement, evidence the intent of the parties that the completion
of the Minority Put transaction was intended to finalize simultaneously all
matters referenced therein related to transfer of the interests being sold to
claimants as a result of the exercise of the Minority Puts.

 

          Accordingly,
no later than April 27, 2009, the parties shall comply with all additional
requirements of Article 5.3 of the Shareholders’ Agreement and Article 9.4 of
the Partnership Agreement in addition to the matters discussed above in [the]
sub-paragraphs [pertaining to payment and transfer of ownership interests],
except to the extent inconsistent with the express provisions of this
Award.  Any disputes related to
performance of any of the additional matters referenced in this subparagraph
[], including any of the issues raised at [pages 47 to 49 of Petrobras’s post-hearing brief], shall not be grounds to
delay performance of any of the obligations specified above in sub-paragraphs
[regarding payment and transfer of ownership interests], but rather, if any
such dispute cannot be resolved by agreement of the parties, shall be resolved
in accordance with the dispute resolution provisions of the Shareholders
Agreement and Partnership Agreement.

 

          Astra timely
transferred its ownership interests to Petrobras on
April 27, 2009, but Petrobras refused to abide by the
Award and pay Astra.        

          Astra filed
suit in federal court seeking judicial confirmation of the arbitral award.  Petrobras filed a
motion for partial vacatur and modification of the
Award.[1]  Petrobras asserted
that the Award should be vacated because the Panel “exceeded its powers” by
requiring Petrobras to close the put rights for PRSI
and the Trading Company without requiring the Astra entities to deliver their
books and records, which Petrobras had requested.[2]  Petrobras also asserted
that the Panel was “guilty of misconduct” because it refused to postpone the
arbitration hearing to permit more discovery.[3]
 On March 10, 2010, the federal district
court confirmed the Award and denied Petrobras’s
motion for partial vacatur and modification.[4]  The federal district later granted Petrobras’s motion to dismiss the suit for lack of subject
matter jurisdiction and vacated its March 10, 2010 opinion confirming the
Award.  

          Astra filed
this action in state district court seeking judicial confirmation of the
Arbitration Award.  As it had in the
federal action, Petrobras filed an application for
partial vacatur and modification of the Award.  Petrobras premised
its vacatur application on section 10(a) of the
Federal Arbitration Act.[5]  Petrobras requested
the trial court to vacate the portions of the award denying Petrobras’s
breach of fiduciary claims and its request for additional discovery.  Petrobras argued
that the Panel was guilty of misconduct by refusing to postpone the hearing and
compel the production of the trade documents, specifically, the “deal sheets,” showing
the price at which Astra had purchased the product before reselling it to
Trading Company.  Petrobras
argued that the trade documents were necessary to support its breach of
fiduciary duty claims against Astra.  It
asserted that the documents would show Astra had usurped a corporate
opportunity for the Trading Company to make a profit.  Petrobras pointed
to correspondence obtained in another suit between the parties confirming that
trade folders exist for transactions in which Astra Oil purchased petroleum
from a third party and then resold it the Trading Company.  Petrobras asserted
that these documents would reveal whether Astra’s “dealings with the joint
venture were fair.”  Petrobras
also points to an email obtained in another suit sent by Astra Oil Trading’s
president, Mike Winget, stating that the Astra
traders seconded to the Trading Company had not been “stellar performers” and
that he would “not say more in print!”  Petrobras argued in its vacatur
application that this indicated wrongdoing by the seconded traders.  More precisely, it asserted that it showed
the traders engaged “in improper conduct constituting a breach of the
contractual fiduciary duties owed to [the Petrobras
entities].”  

          As it had in
federal court, Petrobras also claimed that the Panel
exceeded its authority “by re-writing the closing provisions in the Shareholder
Agreement and the Partnership Agreement.” 
Petrobras relies on the fact that “[t]he Award
orders [Astra] to close on the purchase of [Petrobras’s]
PRSI stock and ownership interest in the Trading Company without obtaining the
documentation (i.e., the corporate books and records of PRSI and the Trading
Company) [Astra] must deliver under the Agreements.”  Petrobras further
alleges that they had asked Astra to deliver these documents but it “refused to
do so.”  

          Petrobras further alleged that the portion of the Award
ordering the Petrobras Partners
to pay Astra Oil $156,442,878.93 to indemnify it for paying part of the Trading
Company’s debt owed to BNP Paribas should be vacated because that portion of
the Award was procured by fraud.  In this
regard, Petrobras asserted that, since the
arbitration hearing, Petrobras had learned that Astra
Oil Trading had not paid the funds to BNP Paribas.  Rather, the funds had been wire transferred to
BNP Paribas’s account from the joint bank account of AOT Trading AG and AOT
Holding Company Limited.  Petrobras argued that Astra Oil was the guarantor on the
line of credit with BNP Paribas, and the indemnity obligation was dependent on Astra
Oil’s payment of the obligation.  It
argued that because Astra Oil had not made the payment, it was not entitled to
indemnity.  Petrobras
also asserted that Astra Oil had procured the indemnity by fraud because it had
represented throughout the arbitration proceedings that it had repaid the funds
to BNP Paribas. 

          After
hearing, the trial court confirmed the Arbitration Award; denied Petrobras application for partial vacatur
and modification; and signed a final judgment incorporating the amounts awarded
by the Arbitration Panel.[6]  Petrobras now appeals
the judgment.  

          On appeal, Petrobras asserts that the trial court erred in confirming
the Award and in denying Petrobras’s request for
partial vacatur. 
To support reversal of the trial court’s judgment, Petrobras
raises the same three issues on appeal as it presented in the trial court to
oppose confirmation and to support partial vacatur of
the Award.  In its challenge to the trial
court’s final judgment, Petrobras asserts as follows:


·      
The portions of the Award denying Petrobras’s breach of fiduciary duty claims and request for
further discovery should be vacated.  The
Arbitration Panel engaged in misconduct when it refused to postpone the
arbitration hearing and compel the production of documents, particularly the
trade documents disclosing the price at which Astra Oil purchased product
before reselling it to the Trading Company. 

 

·      
The portion of the Award interpreting the
closing provisions in the Agreements should be vacated because it “rewrites”
the provisions.  In so doing, the Panel
exceeded its authority.

 

·       The
portion of the Award ordering the Petrobras Partners to
indemnify Astra Oil should be vacated because Astra misrepresented to the Panel
that it had made the payment on which the indemnity was based.  Thus, the indemnity award was procured by
fraud.

 

Scope and Standard of Review

          Petrobras sought partial vacatur
of the Award based solely on the provisions of section 10(a) of the FAA.  The parties agree that the FAA governs this
case.  

          An
arbitration award must be confirmed unless it is vacated, modified, or
corrected pursuant to one of the limited grounds in sections 10 and 11 of the
FAA. See 9 U.S.C. §§ 9–11; see also Roehrs v.
FSI Holdings, Inc., 246 S.W.3d 796, 805–06 (Tex. App.—Dallas 2008, pet. denied); Hasbro, Inc. v. Catalyst USA, Inc., 367
F.3d 689, 691–92
(7th Cir. 2004) (“Confirmation of an arbitration award is generally routine”).  Section 10(a) of the FAA authorizes courts to
vacate arbitration awards in four circumstances:

(1) where the award was procured
by corruption, fraud, or undue means;

 

(2) where there was evident
partiality or corruption in the arbitrators, or either of them;

 

(3) where the arbitrators were guilty of misconduct in
refusing to postpone the hearing, upon sufficient cause shown, or in refusing
to hear evidence pertinent and material to the controversy; or of any other
misbehavior by which the rights of any party have been prejudiced; or

 

(4) where the arbitrators
exceeded their powers, or so imperfectly executed them that a mutual, final,
and definite award upon the subject matter submitted was not made.

 

9 U.S.C. § 10(a).  The party moving to vacate an arbitration
award has the burden of proof.  Lummus Global Amazonas, S.A. v. Aguaytia Energy del Peru, S.R.
LTDA, 256 F. Supp. 2d 594, 604 (S.D. Tex.
2002).

          We
apply de novo review to a trial court’s decision confirming an arbitration
award, recognizing that the statutory grounds for vacatur
under the FAA are limited.  Thomas v. Cook, 350 S.W.3d 382, 392
(Tex. App.—Houston
[14th Dist.] 2011, pet. denied); see also
Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582–89, 128 S. Ct.
1396, 1402–06
(2008).  In our analysis, we review the
entire record.  Ouzenne v. Haynes, No.
01–10–00112–CV, 2011 WL 1938430 at *1 (Tex. App.—Houston [1st Dist.] May 12, 2011, no pet.) (mem. op.).

          An
arbitration award has the same effect as a judgment of a court of last resort;
accordingly, all reasonable presumptions are indulged in favor of the award,
and the award is conclusive on the parties regarding all matters of fact and
law. Ouzenne,
2011 WL 1938430, at *1 (citing CVN Grp., Inc. v. Delgado, 95 S.W.3d 234, 238 (Tex. 2002)).
 Review of an award is so limited that
even a mistake of fact or law by the arbitrator in the application of
substantive law is not a proper ground for vacating an award.  Id. (citing
Crossmark, Inc. v. Hazar,
124 S.W.3d 422, 429 (Tex. App.—Dallas 2004, pet. denied)).  

Misconduct by the Panel

          In their
second issue, Petrobras asserts that the trial court should
have vacated the portions of the Award denying its claims and its request for
additional discovery.  Petrobras contends that the Arbitration Panel engaged in
misconduct when it refused to postpone the arbitration hearing and compel production
of documents relevant to Appellants’ claims. 
Petrobras summarizes its argument with respect
to this issue as follows: 

Despite conclusive proof that Astra intentionally
withheld relevant and responsive documents bearing directly on Petrobras’s fiduciary-duty claims, the Panel refused to
postpone the final arbitration hearing and compel the production of those
documents Petrobras needed for its claim.  Thus, the panel deprived Petrobras
of a fundamentally fair hearing and committed misconduct.

 

          FAA
Section 10(a)(3) provides that an arbitration award
may be vacated “where the arbitrators were guilty of misconduct in refusing to
postpone the hearing, upon sufficient cause shown . . . or of any other
misbehavior by which the rights of any party have been prejudiced.”  9 U.S.C. § 10(a)(3).  “To constitute misconduct requiring vacation
of an award, an error in the arbitrator’s determination must be one that is not
simply an error of law, but which so affects the rights of a party that it may
be said that he was deprived of a fair hearing.”  Laws v.
Morgan Stanley Dean Witter, 452 F.3d 398, 399 (5th Cir. 2006) (citing El Dorado Sch. Dist. No. 15 v. Cont’l Cas. Co., 247 F.3d
843, 848 (8th Cir. 2001); see also Apex
Fountain Sales v. Kleinfeld, 818 F.2d 1089, 1094
(3d Cir. 1987) (“Under Federal law, misconduct apart from corruption, fraud, or
partiality in the arbitrators justifies reversal only if it so prejudices the
rights of a party that it denies the party a fundamentally fair hearing.”).  

          As discussed,
Petrobras alleged that Astra breached its fiduciary
duty by purchasing petroleum products from third parties and then reselling the
product to the Trading Company at a higher price than Astra had paid for
it.  In this regard, Petrobras
asserted that Astra engaged in self-dealing by usurping a corporate opportunity
belonging to the Trading Company to make a profit.  Petrobras requested
the Panel to order Astra to produce certain categories of documents, including trade
documents.  Petrobras
also moved the Panel to postpone the arbitration hearing.           

          In its
opening brief on appeal, Petrobras asserts as
follows:

After Petrobras was alerted to
Astra’s withholding of documents, it moved to compel production and requested a
postponement of the hearing.  Petrobras submitted proof that Astra withheld specific
documents including trading contracts and “deal sheets” that bore directly on Petrobras’s claims.  The
Panel, however, ignored these facts and denied Petrobras’s
requests to compel the production of documents and to postpone the hearing.  The panel thereby forced Petrobras
to prosecute its claims without the very documents necessary to fully prove
them, and then ruled that Petrobras failed to carry
its burden of proof. 

 

          To
support its assertion that Astra withheld documents relevant to Petrobras’s breach of fiduciary duty claim, Petrobras points to documents produced in a separate suit involving
the parties.  These documents include the
email from Astra Oil Trading’s president, Mike Winget,
stating that the Astra traders seconded to the Trading Company had not been
“stellar performers” and that he would “not say more in print!” [7]  Petrobras suggests
that the statement indicates improper conduct by the Astra traders who worked
at the Trading Company.  Petrobras also points to documents relating to a specific,
identifiable trade in which Astra sold product to the Trading Company that Astra
had purchased from an undisclosed third party for an unknown price.  

          Petrobras acknowledges the extensive testimony heard by the
Panel at the arbitration hearing regarding the trades.  This testimony included a great deal of information
regarding pricing of the product and whether Astra had profited from these
deals to the detriment of the Trading Company. 
Nonetheless, Petrobras avers that it was prejudiced
by the Panel’s denial of its motions to compel and to postpone the hearing.  It asserts that it did not have the trade
documents, including the deal sheets, to conduct a meaningful and effective
cross-examination of Astra’s witnesses.  In
short, it asserts that it was denied a fundamentally fair hearing on its breach
of fiduciary claims. 

          The standard,
however, is not whether Petrobras would have
benefitted from the trade documents’ production.  “Arbitrators are not bound by formal rules of
procedure and evidence, and the standard for judicial review of arbitration
procedures is . . . whether a party to arbitration has been denied a
fundamentally fair hearing.”  Nat’l Post Office v. U.S.
Postal Serv., 751 F.2d 834, 841 (6th Cir. 1985).  This is in line with the general purpose of
arbitration to promote a speedy and efficient resolution to conflicts without
the formalities of litigation.  See, e.g., Admart AG v. Stephen & Mary Birch Found., Inc., 457
F.3d 302, 311 (3d Cir. 2006); Aerojet–Gen. Corp. v.
Am. Arbitration Ass’n, 478 F.2d 248, 251 (9th
Cir. 1973).  The United States Supreme
Court has explained, “[B]y agreeing to arbitrate, a party ‘trades the
procedures and opportunity for review of the courtroom for the simplicity,
informality, and expedition of arbitration.’”  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31, 11 S. Ct.
1647, 1655 (1991).  These
principles are reflected, here, in the parties’ arbitration agreement; the
parties agreed to expedited arbitration with an award to be made within 60 business
days of the arbitration demand.  

          With respect
to discovery in the context of arbitration, one court explained,

[A]rbitrators are not required
to sacrifice speed or informality in order to permit a party to introduce every
piece of relevant evidence. . . . Although arbitrators may not deny discovery
of documents which are central to a dispute, they may conduct only such
discovery as they find necessary and can refuse discovery of evidence of
uncertain relevance or evidence related to non-merits issues.

 

Roberts
v. A.G. Edwards & Sons, Inc., No. B–06–17,
2007 WL 597371, at *7 (S.D. Tex. Feb. 21, 2007) (citations omitted).  Nonetheless, courts have recognized that fundamental
fairness requires that each party have an adequate opportunity to present its
evidence and its arguments.  Forsythe Int’l, S.A. v. Gibbs Oil Co,
915 F.2d 1017, 1023 (5th Cir. 1990); Int’l
Bank of Commerce–Brownsville v. Int’l Energy Dev. Corp., 981 S.W.2d 38, 42–3 (Tex. App.—Corpus
Christi 1998, pet. denied) (citing Bos. Celtics Ltd. P’shp v. Shaw, 908 F.2d 1041, 1046–47 (1st Cir. 1990)).  Thus, the inquiry here is whether Petrobras proved that the Panel’s decision not to order
further discovery and postpone the arbitration hearing deprived Petrobras of a fair hearing.  If the answer is no, then the trial court
correctly determined that the Panel did not engage in misconduct that would
warrant vacatur under FAA section 10(a)(3).  

          During the
eight-day arbitration hearing, counsel for each side elicited direct testimony
and conducted in-depth cross-examination regarding the propriety of the trades
at issue.  Fernando Assad testified in
support of Petrobras’s claims that Astra had engaged
in self-dealing.  Astra offered the
testimony of its representatives Alberto Felhaber and
Irek Kotula.  The witnesses testified regarding the
mechanics of the trades, internal procedures to ensure the integrity of the
transactions, pricing, profits, deal sheets, and a myriad of other related
issues.  Significantly, Irek Kotula, an Astra managing
trader who worked at the Trading Company, testified that the deal sheets for
the trades were sent to two members of the Trading Company’s board of
directors, including a representative of Petrobras,
Sergio Baron, “for oversight and questions.” 


          In the
portion of Award denying Petrobras’s claims based on
the trades, the Panel wrote as follows:

The evidence indicates . . . that the parties were well
aware that [Astra’s] traders, from time to time, traded directly with the Trading
Company, and that Petrobras’
Sergio Baron received deal sheets for such trades.  In any event, the Panel concludes that [Petrobras has] not shown that [Astra] breached any
contractual or other duties nor that any damages were caused by these trades.

 

          As indicated
by this provision, the Panel chose to believe Kotula’s
testimony.  See Ouzenne, 2011 WL 1938430, at *2 (stating
that arbitrator judges credibility of witnesses and may choose who to believe
or to disbelieve).  Given the extensive testimony regarding
the trades offered by each side, including Kotula’s
testimony that Petrobras had received the deal sheets
through Baron, the record does not demonstrate that Petrobras
lacked sufficient information to cross-examine Astra’s witnesses or to
prosecute its breach of fiduciary claims against Astra.  

          The record
shows that, after the Panel had heard the evidence in this case, Petrobras was afforded another opportunity to demonstrate
why it was entitled to additional discovery. 
The Panel’s Award indicates that it considered Petrobras’s
arguments regarding the need for additional discovery before issuing the Award.  The Panel made this evaluation after hearing
the evidence in the case.  

          As set forth
more fully infra, the Panel provided
a lengthy and thoughtful explanation regarding why no further discovery was
needed.  In pertinent part, the Panel
explained that “the discovery authorized here was fully consistent with the
scope of discovery authorized by the [Arbitration] Rules . . . and afforded all
parties a reasonable opportunity to prepare their cases for hearing.”  The Panel continued that it found that Astra
had “complied with [its] discovery obligations and that no further discovery
should be ordered.”  The Panel concluded
that “the additional discovery sought by [Petrobras],
if permitted, would unreasonably delay the parties’ ability to obtain a Final
Award in this arbitration for no persuasive or necessary reason.”    

          We conclude that
Petrobras has failed to show that it did not receive
a full and fair hearing on its breach of fiduciary duty claims as a result of
the Panel’s denial of its request for additional discovery and its
concomitant request to postpone arbitration.  We further conclude that Petrobras
has not shown that the Panel engaged in misconduct entitling Petrobras to partial vacatur of
the Award.  See 9 U.S.C. § 10(a)(3).  We hold that the trial court properly denied Petrobras’s motion for partial vacatur
of the portions of the Award denying Petrobras’s
claims and its request for further discovery. 


          As an
alternative to partial vacatur, Petrobras
requested the trial court to allow it to conduct additional discovery.  The trial court denied the relief.  Petrobras requests
this Court to remand the case to the trial court for additional discovery regarding
the documents allegedly withheld by Astra. 
Petrobras asserts in its brief that “discovery
is available in a post-arbitration proceeding when relevant and necessary to
the determination of an issue raised by a party’s vacatur
motion.”  It cites Karlseng v. Cooke for support.  286 S.W.3d 51, 58 (Tex. App.—Dallas
2009, no pet.).  

          In Karlseng, the
court reversed the trial court’s confirmation of the arbitration award after
concluding that the trial court abused its discretion by denying appellants’
motion for continuance to investigate the evident partiality of the arbitrator.  Id.  The court held that the trial court abused
its discretion by failing to grant the requested continuance after being
presented uncontradicted evidence that the arbitrator
failed to disclose a prior relationship with appellee’s lead counsel.  Id. 

          In contrast, Petrobras’s sole argument on appeal is that “new evidence
that came to light after the arbitration provides clear proof that discovery
abuse did occur, and warrants discovery into this issue.”  Petrobras offers no
further argument to show how the trial court abused its discretion in denying
its discovery request.  As discussed
above, the Arbitration Panel concluded that it had sufficient evidence to
determine Petrobras’s claims.  It was well aware that Petrobras
wanted to obtain copies of the Astra’s trade files for certain
transactions.  

          None of the
“newly discovered evidence,” referenced by Petrobras
in other portions of its brief, shows that Astra engaged in self-dealing.  In fact, at the hearing on its vacatur motion, Petrobras’s
counsel acknowledged that Petrobras did not know
whether the trade files would show any wrongdoing by Astra.  

          In short, Petrobras does not explain how any of the “newly discovered
evidence” will advance its request for vacatur beyond
its general allegation that Astra engaged in a pattern of discovery abuse.  Petrobras has not
shown that the trial court abused its discretion in denying the request for
additional discovery. 

          We overrule Petrobras’s second issue. 


Exceeding Authority

          In its third
issue, Petrobras contends that the Award should be
vacated because the Panel exceeded its authority by “rewriting” the parties’
agreements to require Petrobras to close the put
rights for PRSI and the Trading Company without, in turn, requiring Astra to
deliver its books and records, which Petrobras had requested.
 This argument falls within Section 10(a)(4) of the FAA which provides that an arbitration award may
be vacated “where the arbitrators exceeded their powers.”  9 U.S.C. § 10(a)(4).

          Article 5.3
of the Shareholder Agreement and Article 9.4 of the Partnership Agreement
provide that if the Astra entities validly exercise their put rights, the
parties are required to proceed to closing.  Those provisions required the Petrobras entities to pay the put prices for the companies.  The Agreements required Astra to transfer
ownership in the companies to Petrobras and to deliver
“documents and assignments as [Petrobras] may
reasonably request.”  

          Petrobras complains that the second paragraph of following
provision in the Award impermissibly “rewrites” the agreement by forcing it to
pay the put prices for the companies, even if Astra fails to deliver documents Petrobras had reasonably requested:

We find that the provisions of Article 5.3 of the
Shareholders’ Agreement and the corresponding provision in Article 9.4 of the
Partnership Agreement, evidence the intent of the parties that the completion
of the Minority Put transaction was intended to finalize simultaneously all
matters referenced therein related to transfer of the interests being sold to
claimants as a result of the exercise of the Minority Puts.

 

          Accordingly,
no later than April 27, 2009, the parties shall comply with all additional
requirements of Article 5.3 of the Shareholders’ Agreement and Article 9.4 of
the Partnership Agreement in addition to the matters discussed above in [the]
sub-paragraphs [pertaining to payment and transfer of ownership interests],
except to the extent inconsistent with the express provisions of this
Award.  Any disputes related to
performance of any of the additional matters referenced in this subparagraph
[], including any of the issues raised at [pages 47 to 49 of Petrobras’s post-hearing brief], shall not be grounds to
delay performance of any of the obligations specified above in sub-paragraphs
[regarding payment and transfer of ownership interests], but rather, if any
such dispute cannot be resolved by agreement of the parties, shall be resolved
in accordance with the dispute resolution provisions of the Shareholders’
Agreement and Partnership Agreement.

 

          “Arbitration
is a matter of contract: The powers of an arbitrator are dependent on the
provisions under which the arbitrators were appointed.”  Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397, 401
(5th Cir. 2007) (internal quotation marks omitted) (quoting Brook v. Peak Int’l, Ltd., 294 F.3d 668, 672 (5th Cir. 2002)).  “Where arbitrators act ‘contrary to express
contractual provisions,’ they have exceeded their powers.”  Id.
(quoting Delta Queen Steamboat Co. v.
AFL–CIO, 889 F.2d 599, 604 (5th Cir. 1989)).  

          When
an arbitration agreement gives an arbitrator authority to interpret and apply a
contract, the arbitrator’s construction of that contract must be enforced so
long as it is “rationally inferable from the letter or purpose of the
underlying agreement.”  Glover v. IBP, Inc., 334 F.3d 471, 474
(5th Cir. 2003) (quoting Executone Info.
Sys., Inc. v. Davis, 26 F.3d 1314, 1320 (5th Cir. 1994); see also Halliburton Energy Servs., Inc. v. NL Indus.,
553 F. Supp. 2d 733, 754 (S.D. Tex. 2008).  In deciding what is rationally inferable from
the underlying contract, a court is guided by the usual state-law rules of
contract interpretation.  Glover, 334 F.3d at
474.  “[I]f an arbitrator is even
arguably construing or applying the contract and acting within the scope of his
authority, the fact that a court is convinced he committed serious error does
not suffice to overturn his decision.”  Major League Baseball Players
Ass’n v. Garvey, 532 U.S. 504, 509, 121 S. Ct.
1724, 1728 (2001) (internal citations omitted).  

          Here,
the Agreements authorized the Panel to resolve “any dispute arising out of or
relating to [these Agreements].”  Thus,
the Panel had authority pursuant to the Agreements to interpret the contractual
provisions.  Petrobras
does not argue that the Panel did not have authority to interpret the
Agreements.  Instead, Petrobras
intimates that the Panel did not merely interpret the Agreements but rewrote
them by omitting the document production requirement.  Petrobras
contends that the Panel acted contrary to the express contractual provisions of
the Agreements because it did not require Astra to deliver at closing documents
reasonably requested by Petrobras.  

          Contrary
to Petrobras’s reading, the Award requires Astra to
comply with all closing provisions.  This
necessarily includes requirement that Astra deliver the reasonably requested
documents at closing.  The Panel did not omit
or exclude these provisions or otherwise absolve Astra from performance.  Thus, the Award requires Astra to deliver reasonably
requested documents at the closing on April 27, 2009, when Petrobras
“simultaneously” fulfilled its payment obligations under the Agreements.  

          The
Panel’s Award makes clear, however, that regardless of whether Astra delivers
the requested documents at closing, Petrobras must
still fulfill its payment obligation, and Astra must still fulfill its
obligation to deliver its ownership interests in the companies.  Pursuant to the Panel’s interpretation of the
closing provisions, nonperformance of the document delivery requirement does
not authorize delayed performance by Petrobras
regarding payment or by Astra regarding transfer of its ownership rights.      In
other words, the Panel interpreted the provision regarding the delivery of the
documents not to be a condition precedent that must be performed to trigger Petrobras’s payment obligation under the Agreements.  Rather, the Panel interpreted the document
delivery provisions to be covenants that, if not performed, could be resolved
by additional arbitration.  See Solar Applications Eng’g,
Inc. v. T.A. Operating Corp., 327 S.W.3d 104, 108 (Tex. 2010) (discussing
distinction between a condition precedent and a covenant).  

          In
sum, the Panel had the authority to interpret the Agreements.  When it determined that Petrobras’s
performance was not conditioned on Astra’s delivery of the documents, the Panel
was applying the law and interpreting the Agreements; it was not rewriting them.
 In actuality, what Petrobras
is asking this Court to do is exactly what we cannot: second-guess the Panel’s
decision on the merits of contract interpretation.  See Kergosien v. Ocean Energy, Inc., 390 F.3d 346, 353 (5th
Cir. 2004) (“[S]o far as the arbitrator’s decision concerns construction of the
contract, the courts have no business overruling him because their
interpretation of the contract is different than his.”).  

          We
conclude that Petrobras has not shown that the Panel
exceeded its authority.  We hold that the
trial court properly denied Petrobras’s motion for
partial vacatur with respect to this ground.  

          We
overrule Petrobras’s third issue.

Procuring Award through
Fraud

          In
its fourth issue, Petrobras asserts that the portion
of the Award ordering Petrobras to pay Astra $156
million for indemnity should be vacated because that portion of the Award was
procured through fraud.  Section
10(a)(1) of the FAA provides that an arbitration award
may be vacated “where the award was procured by corruption, fraud, or undue
means.”  9 U.S.C. § 10(a)(1).

          A
party alleging that an arbitration award was procured through corruption,
fraud, or undue means must demonstrate that the improper behavior was (1) not
discoverable by due diligence before or during the arbitration hearing, (2)
materially related to an issue in the arbitration, and (3) established by clear
and convincing evidence.  See Roehrs, 246 S.W.3d at 810–11; In re
Arbitration Between Trans Chem. Ltd. & China Nat’l Mach. Imp. & Exp. Corp., 978 F. Supp. 266, 304 (S.D. Tex. 1997).
 Fraud requires a showing of bad faith
during the arbitration proceedings, such as bribery, undisclosed bias of an
arbitrator, or willfully destroying or withholding evidence.  Roehrs, 246 S.W.3d at 812; In re Arbitration Between Trans Chem. Ltd.
& China Nat’l Mach. Imp. & Exp. Corp., 978 F. sSupp.
at 304.  Section
10(a)(1) also requires a nexus between the alleged
fraud and the basis for the arbitrator’s decision.  In re
Arbitration Between Trans Chem. Ltd. & China Nat’l Mach. Imp. & Exp. Corp., 978 F. Supp. at
304; Forsythe Int’l S.A. v. Gibbs Oil Co.,
915 F.2d 1017, 1022 (5th Cir. 1990).

          In
its opening brief, Petrobras asserts as follows with
regard to its fraud claim: 

In support of this indemnification claim, [Astra Oil
Trading] submitted sworn testimony from Kari Burke, an accountant employed by
one of [Astra Oil Trading’s] affiliates. 
Burke specifically asserted that [Astra Oil] had made the $156 million
payment, stating that “[Astra Oil] paid to [BNP] Paribas on November 3, 2008,
by wire transfer, the total demanded of [Astra Oil] by [BNP] Paribas, an amount
of . . . $156,442,878.93.”  [Astra Oil]
also represented in its pleadings that it had made the $156 million
payment.  The Panel accepted these
representations and Burke’s testimony about [Astra Oil] making the payment as
true, and awarded [Astra Oil Trading] the indemnity. 

 

          However,
it was later shown in [Astra Oil’s] lawsuit with PRSI and PRSI Trading [in
another court] that [Astra Oil] did not in fact make the $156 million payment
that allegedly gave rise to its claim for indemnification.  Rolf Mueller, [Astra Oil Trading’s] Chief
Financial Officer, admitted that the $156 million payment originated from a UBS
bank account jointly owned by two separate entities, AOT Trading AG and AOT Holding
Ltd., and not [Astra Oil Trading]. . . . 

 

          [Astra Oil’s]
misrepresentations about the source of the $156 million payment require vacatur of the portion of the award granting it an
indemnity for this amount.  [Astra Oil]
knew before making its indemnification claim in the arbitration that the $156
million payment had actually been made by AOT Holding, but it failed to
disclose that critical fact to the Panel, and instead misrepresented that [Astra
Oil] had made the payment.  

 

          Regardless of
the propriety of these allegations, Petrobras made no
showing that the fraud was not discoverable on the exercise of due diligence
before or during arbitration.  To the
contrary, documents submitted by Astra in response to the vacatur
motion show that, before the arbitration, Petrobras
was aware that the funds had been wire transferred from AOT Trading AG’s bank
account.  

          We conclude
that Petrobras failed to show that the $156 million
indemnity award was procured by fraud. 
We hold that the trial court properly denied the motion for partial vacatur with respect to this ground.  

          We overrule Petrobras’s fourth issue.[8]

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                      Laura
Carter Higley

                                                                      Justice


 

Panel consists of Chief
Justice Radack and Justices Higley and Brown.











[1]         See Astra Oil Trading N.V. v. Petrobras Am. Inc., 718 F.Supp.
2d 805 (S.D. Tex. 2010), vacated
on reh’g, Astra Oil Trading N.V. v. Petrobras Am. Inc., No. H–09–1274, 2010 WL
3069793 (S.D. Tex. Aug. 4, 2010).

 





[2]         Id. at 718 F. Supp.2d at 812.  

 





[3]         Id. at 718 F. Supp.2d at 813.

 





[4]         Id. at 816.

 





[5]         See
9 U.S.C. § 10(a).





[6]         Petrobras also
moved for joinder of a third-party affiliate of Astra, appellee, Pasadena
Refinery Holding Partnership because it had claimed an interest in the subject
of the award.  The trial court granted
the motion to join Pasadena Refinery.





[7]         Nothing in the record indicates that the
traders’ performance referenced by Winget related to
the allegations of self-dealing made by Petrobras.  However, Petrobras
asserts that it was entitled to information regarding the traders’ performance
and suggests that the email may have led to additional relevant
information.  

 

          Petrobras also discusses additional documents discovered in
separate state court litigation.  These
documents do not relate directly to the breach of fiduciary duty claim or to
the trading activities; instead, they relate to other issues determined in the
arbitration, such as the value of the put option exercised by Astra.  Petrobras also
points to correspondence indicating that documents claimed by Astra in the
arbitration to be privileged were not privileged.  Petrobras appears
to cite these documents to show that Astra had engaged in a pattern of
discovery abuse and to show that it was prejudiced by Astra’s conduct.  Petrobras also
points out that the federal district court, which initially confirmed the
Award, remarked in a footnote to its opinion vacating its earlier opinion and
dismissing the action, that email chains had been
discovered in a state court proceeding between the parties that appear to have
been relevant to the arbitration but were not produced.  See Astra
Oil Trading NV v. Petrobras Am., Inc., No. H–09–1274,
2010 WL 3069793, at *5 n.17 (S.D. Tex. Aug. 4, 2010).  The federal court did not state that it
believed its earlier confirmation of the Arbitration Award had been in error;
nor did it otherwise explain the significance of the newly discovered documents
it found to be relevant to the arbitration. 
The footnote has no bearing on our review here.

 





[8]         Having overruled Petrobras’s
second, third, and fourth issues identifying specific grounds to reverse the
trial court’s judgment, we also overrule Petrobras’s
first issue which raised a global challenge to the judgment.